JACOB BAUMAN ET AL. v. ALEXANDER M. CAMPAU, THE CITY
                    OF DETROIT ET AL.

*Judicial authority over opening and closing of streets.*

1. Courts cannot interfere with municipal control over the question as to
   what streets shall be opened and worked, and how and when. Nor
   has a court of equity the means or process for executing the decision
   of such questions.

2. Private citizens cannot dictate through the courts the line of public
   duty.

3. A small portion of a street that had been opened under an invalid
   statute was afterward discontinued so that travel was deflected from
   a straight line at its outlet, but the distance to be traveled was not
   substantially increased. The discontinued part had never been com-
   pleted as a street, and was taken for business purposes and fenced
   in. Before this a curb had been run across it where its original out-
   let had been. *Held*, that private citizens could not maintain a bill to
   compel the re-opening of the street, especially if they raised no
   objection until several years after these changes were made, and
   showed no grievance more substantial than a mere side-tracking of
   the street without other inconveniences.

4. The proper municipal authorities can discontinue a portion of a street,
   if they could do so otherwise, in consideration of the opening of
   another street and outlet by a private citizen whose interests are
   affected in both cases.

5. The fact that a street is made less conspicuous by discontinuing a por-
   tion of it, is too shadowy a grievance, if depreciation in the value of
   property thereon is not shown, to sustain a bill in equity to require
   it to be opened again.

Appeal from Wayne. (Jennison, J.)  Nov. 6.—Nov. 11.

BILL to compel opening of highway. Defendant Campau
appeals. Reversed.

*Fred. A. Baker* for complainant.

*Frederick T. Sibley* and *John H. Bissell* for appellant.
The exercise of legislative power cannot create a wrong in
the eye of the law: *Detroit v. Beckman* 34 Mich. 125;

*McCutcheon v. Homer* 43 Mich. 483; *Burford v. Grand Rapids* 53 Mich. 98; nor can a failure in political duty give a right of action: *Henkel v. Detroit* 49 Mich. 249; see *Smith v. Boston* 7 Cush. 254; *Heller v. Railroad Co.* 28 Kan. 625; *Chicago v. U. Building Ass'n* 102 Ill. 379; *Coster v. Mayor of Albany* 43 N. Y. 414; *Fritz v. Hobson* 19 Am. L. Reg. (N. S.) 615.

CAMPBELL, J. Complainants, Bauman, Rush, Herzog and Mylius, owners of property on Preston street, which is an east and west street in Detroit, fifty feet wide, filed this bill to compel the city of Detroit to open what they claim to be a portion of said street about seventy-five feet long, lying between McDougall avenue, which is a north and south eighty feet wide street, and Gratiot avenue which runs north-easterly. Campau and the other defendants own the freehold, the former absolutely, and the others as his lessees. The lessees occupy the land in question as part of their planing-mill premises, and have done so since August, 1881, a little more than two years before this bill was filed.

The circuit court for Wayne county required the obstructions to be removed and the property opened for public use.

The street called Preston Street was in 1873 defined by the common council and attempted to be laid out from Mt. Elliott avenue, which was then the eastern boundary of the city, to Gratiot avenue, a distance of about two-fifths of a mile. These proceedings were had under a law which was declared by this Court to be void in *Paul v. Detroit* 32 Mich. 108. The jury, as is not unusual in such cases, made the damages and benefits correspond in taking the land, except a few trifling assessments which covered expenses. Mr. Campau had one dollar awarded to him for the strip running across his farm, known as the McDougall Farm, and $49 for damages to buildings. He was at this time absent from the country, and did not return until about five months after the proceedings had been confirmed. Immediately after his return, on learning what had been done, he applied to the council to vacate the proceedings and offered to open McDougall avenue and several other streets as the

board of public works should approve, leaving Preston street to continue eastwardly from McDougall avenue as projected, but substituting an outlet through McDougall avenue to Gratiot avenue for the outlet through Preston street as extended. This would make a slight deflection northward of the original proposed outlet of Preston street, but not substantially longer to Gratiot street. He gave up any claim to the money assessed by the jury, and the council having accepted his offer, and his new plan having been carried out, a formal resolution was passed vacating that end of Preston street and declaring that the necessity for it no longer existed, and that the new plan was preferable.

Before Mr. Campau's return the highway officers had done something towards plowing up and preparing the surface of the street, and it was subsequently traveled more or less, the testimony, however, not showing any considerable use, or any further working after Mr. Campau's arrangement was closed. Water-pipes were run across it from Gratiot street into Preston, and a hydrant made within the lines. But in 1878, on paving Gratiot street, the curb was continued unbroken across what would have been the terminus, and McDougall avenue was the only street recognized and took the bulk of the travel. The land in the vicinity, being level and open, was used more or less also.

The complainants do not show that they have suffered any tangible grievance by the change, except that of having lost an absolutely straight street terminus on Gratiot street, and been compelled to have one with a small deflection, cutting off the view of Preston street from Gratiot.

We do not think this bill can be sustained on any ground. The parties had notice, and there was plain action showing what the city authorities were doing when Gratiot street was so paved as to cut off the outlet and McDougall street was treated as the outlet. That was five years before this suit, and there is testimony indicating still earlier knowledge. They had further distinct notice in 1881 when the lessees Heck and Vieson fenced in the property and established their works there, which would be seriously interfered with

by disturbing their possession. There is no equity in such delay.

It is also evident that they have no legal rights beyond what would accrue from the acquiescence of the owners of the land through which Preston street runs, in its occupation as a street. The legal steps to condemn it were invalid. This acquiescence does not extend across McDougall street, and there was no reason why the city could not make such arrangements as it did with Mr. Campau, and substitute what was regarded as a better outlet, besides gaining other advantages in the acquisition of new streets across the McDougall farm.

But had there been any technical illegality (as we think there was not) in this municipal action, we are not able to discover what rights complainants would have to file this bill. It is based entirely on the ground that the city neglects its duty to open and work a public highway, and the only claim that they show—(and it is doubtful if the bill shows that)—is that as lot-owners on the street they suffer some private detriment from a public nuisance.

They show no facts which make out any such grievance as a court of equity can redress. So far as the facility of travel is concerned, it is absurd to imagine that it has been interfered with. Their outlet is easy and complete. All that they really complain of is that their street is less conspicuous than it would be if continuing in a straight line to Gratiot avenue. There is no proof that this has made their property less valuable. But it is not within the scope of the extraordinary powers of equity to deal with such a shadowy grievance, if they had a right, which in our opinion they have not, to set it up.

There is also a further vital objection to the frame of the bill. It attempts to invoke the aid of equity to interfere with the municipal control over the working of streets. It is not within the power of any court to determine what streets shall be opened and worked, or when or how it shall be done. A court of equity has no means or process to carry out any

such order.    And private citizens cannot dictate to a city what shall be done in the line of public duty.

The case is without merits, and the decree below must be reversed and the bill dismissed with costs of both courts.

The other Justices concurred.