CITY SMOKED FISH COMPANY v DEPARTMENT OF
AGRICULTURE

1. COURTS—POWERS—SEPARATION OF POWERS.

The judicial branch of government is precluded by the doctrine of separation of powers from exercising, under the guise of review, powers conferred upon officers of another branch of government.

2. HEALTH—REGULATIONS—RATIONAL BASIS.

The courts are without authority to question the wisdom of a public health regulation or to substitute their judgment for that of the agency duly empowered to adopt it when a rational basis exists for the regulation.

3. FOOD—PROCESSING—REGULATION—CONSTITUTIONAL LAW—ARBITRARINESS.

A regulation of the Michigan Department of Agriculture which required a higher salt content in packaged fish than a United States Food and Drug Administration regulation was not arbitrary and unconstitutional where evidence offered at an evidentiary hearing indicated a difference in scientific opinion as to the proper method for preserving fish, and it therefore could not be concluded as a matter of fact or law that the regulation was without scientific basis or without a rational relationship to the furtherance of the health and welfare of the people.

4. FOOD—PROCESSING—REGULATION—INTERSTATE COMMERCE.

The power of the Michigan Department of Agriculture to regulate manufacturers, processors, and packagers of food that may be injurious to health as a result of contamination from microorganisms is restricted to the processing of food that is to be distributed in the state, and a department regulation must therefore be construed as inapplicable to the processing of food that is prepared for distribution in interstate commerce (MCLA 289.86, 289.718).

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur 2d, Courts § 66.
[2] 16 Am Jur 2d, Constitutional Law §§ 160–171, 225, 226.
[3, 4] 35 Am Jur 2d, Food § 63 *et seq.*

Appeal from Wayne, John D. O'Hair, J. Submitted Division 1 June 20, 1972, at Detroit. (Docket No. 11844.) Decided May 22, 1973. Leave to appeal denied, 390 Mich 790.

Complaint by City Smoked Fish Company against the Department of Agriculture, Food Inspection Division, and others for injunctive relief and to declare a department regulation unconstitutional. Summary judgment for defendants. Plaintiff appeals. Affirmed.

*Leib & Leib,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Thomas R. Wheeker,* Assistant Attorney General, for defendants.

BEFORE: LESINSKI, C. J., and LEVIN and V. J. BRENNAN, JJ.

V. J. BRENNAN, J. Plaintiff appeals from Wayne County Circuit Judge John D. O'Hair's grant of defendants' motion for summary judgment. We find the opinion of the trial judge to be without fault and herewith adopt it as our own:

"Plaintiff a Michigan corporation, is engaged in the business of processing and selling smoked fish, or more specifically, smoked chubs. It professes to be one of the largest processors in the midwest with annual sales of $2,000,000. Approximately 50% of plaintiff's product is prepared for distribution in interstate commerce.

"In 1965, the state Department of Agriculture adopted Regulation No. 541, which regulates the processing, handling, storing, labeling, and advertising of smoked fish. Rule 3 of the aforesaid regulation provides:

" 'All smoked fish shall be processed so that the water

phase portion of the finished product shall have a salt (sodium chloride) content of not less than 5%: specifically, the quotient of the salt content of the finished product when divided by the sum of the salt and moisture contents multiplied by a factor of 100, which shall yield a number of at least 5. The determination of salt and moisture content is to be made using the loin muscles of the fish excluding bones and skin.'

"Plaintiff challenges the constitutionality of the rule on the grounds that it is unreasonable, arbitrary, oppressive, and effects a taking of plaintiff's property without due process of law in violation of the 5th and 14th Amendments to the U.S. Constitution and Article II, Sections IV and XVI* of the Michigan Constitution of 1963.

"It is contended by the defendants that Rule 3 is a valid and constitutionally permissible regulation that reasonably protects the health of the people of the State of Michigan by preventing the ingestion of smoked fish containing a toxic micro-organism, *i.e., clostridium botulinum* type E, which renders the fish unsafe for human consumption.

"The Michigan Department of Agriculture was established by the Legislature in 1921. Thereafter, it underwent reorganization pursuant to the provisions of 1965 PA 380, the Executive Organization Act of 1965.[1] As reorganized, the Commission of Agriculture[2] retained among its many responsibilities the duty to promote or protect public health by enforcing and implementing laws relating to the preparation and sale of food products intended for human consumption. Specifically, it is the department's responsibility to enforce what are characterized as the state's 'pure food laws'.

"Defendants premise the authority for the Director of

---

* The sections of the constitution referred to are erroneously cited by the circuit court; the reference should probably be to Article I, Section 17.

"[1] 1965 PA 380 [MCLA 16.101 *et seq.;* MSA 3.29(1) *et seq.]* became effective July 23, 1965."

"[2] 1948 CL 16.276; MSA 3.29(176) provides that the Director of Agriculture and the Commission of Agriculture are to be deemed as one and the same."

Agriculture's adoption of Regulation No. 541[3] on Section 5 of 1895 PA 193, as amended, and Section 2 of 1917 PA 344. Additionally, the following statutory enactments are material to the issues raised in these proceedings: 1895 PA 193, § 6 (1)[4]:

" 'Whenever the director of agriculture finds after investigation that the distribution of any class of food, by reason of contamination with microorganisms, may be injurious to health, and that the injurious nature cannot be adequately determined after the articles have entered commerce, he then, and in such case only, shall promulgate regulations providing for the issuance, to manufacturers, processors, or packers of such class of food, of permits to which shall be attached such conditions governing the manufacture, processing, or packing of such class of food, for such temporary period of time as may be necessary to protect the consumers. The director shall issue permits to all manufacturers, processors or packers, which are required to have permits and refusal of the director to issue permits may be appealed to circuit court. After the effective date of the regulations, and during the temporary period, no person shall introduce or deliver for introduction into commerce any such food manufactured, processed or packed by such manufacturer, processor, or packer unless the manufacturer, processor, or packer holds a permit issued by the director as provided by the regulations.'

"1968 PA 39, Section 18[5]:

" 'When the department finds after investigation that the distribution in this state of any class of food may be injurious to health, by reason of contamination with microorganisms during manufacture, processing or packing thereof in any locality, and that the injurious nature cannot be adequately determined after the food has entered commerce, and in such case only it shall

"[3] Section 501 of PA 380, *supra,* continues in effect until revised, amended or repealed all rules and regulations duly promulgated by the Director of Agriculture prior to the department's reorganization in July, 1965."

"[4] 1948 CL 289.86; MSA 12.875(2)."

"[5] 1948 CL 289.718; MSA 12.933(18)."

promulgate regulations providing for the issuance to manufacturers, processors, or packers of such class of food in the locality of permits, to which shall be attached such conditions governing the manufacture, processing or packing of the class of food, for such temporary period of time, as may be necessary to protect the consumers. After the effective date of the regulations, and during the temporary period, no person shall introduce or deliver for introduction into commerce any such food manufactured, processed or packed by any manufacturer, processor or packer unless the manufacturer, processor or packer holds a permit issued by the department as provided by the regulations.'

"On August 16, 1969, the Commissioner of the United States Food and Drug Administration promulgated an amendment to existing federal food regulations to provide for the use of sodium nitrite as an additive in the commercial processing of smoked chubs to inhibit the toxin formation of *clostridium botulinum,* type E. The amendment, *i.e.,* 21 Code of Federal Regulations, part 121, subpart D,[6] insofar as material, provides:

" '§ 121.1230  *Sodium nitrite used in processing smoked chub.*

" 'The food additive sodium nitrite may be safely used in combination with salt (NaCl) to aid in inhibiting the outgrowth and toxin formation from *clostridium botulinum* type E in the commercial processing of smoked chub in accordance with the following prescribed conditions:

" '(a) All fish in smoking establishments shall be clean and wholesome and shall be expeditiously processed, packed, and stored under adequate sanitary conditions in accordance with good manufacturing practice.

" '(b) The brining procedure is controlled in such a manner that the water phase portion of the edible portion of the finished smoked product has a salt (NaCl) content of not less than 3.5 percent, as measured in the loin muscle, and the sodium nitrite content of the edible portion of the finished smoked product is not less

---

[6] The amendment became effective upon publication in the Federal Register on August 26, 1969."

than 100 parts per million and not greater than 200 parts per million, as measured in the loin muscle.

" '(c) Smoked chub shall be heated by a controlled heat process which provides a monitoring system positioned in as many strategic locations in the smokehouse as necessary to assure a continuous temperature throughout each fish of at least 160°F. for a minimum of 30 minutes.

" '(d) The finished product shall be cooled to a temperature of 50°F. or below within 3 hours after smoking and further cooled to a temperature of 38°F. or below within 12 hours after smoking. A temperature of 38°F. or below shall be maintained during all subsequent storage and distribution. All shipping containers, retail packages, and shipping records shall indicate with appropriate notice the perishable nature of the product and specify that the product shall be held under refrigeration (38°F. or below) until consumed.'

"The basis of plaintiff's contention that Regulation No. 541 is unreasonable and arbitrary is essentially that the salt requirements of the Federal Food and Drug Administration for processing smoked fish are lower, *i.e.,* 3.5%, when sodium nitrite is employed as an additive, and such method of processing is not provided for by the state's regulation. A comparison of the state and federal regulations leads to the simple conclusion that two distinct methods are prescribed for the inhibition of *clostridium botulinum,* type E, in smoked chubs.

"It is apparent from the testimony of Dr. Richard V. Lechowich and Theodore D. Sanford that there exists a difference in scientific opinion as to the effectiveness of the additive, sodium nitrite, as an inhibitor of *clostridium botulinum,* type E, in smoked chubs having a salt content of 3.5%.[7] The testimony of the aforementioned witnesses, though in conflict, was of credible quality. Dr. Lechowich's opinions have the acceptance of the Michigan Department of Agriculture, while Mr. Sanford's opinions have the acceptance of the U.S. Food and Drug Administration.

"From the evidence offered at evidentiary hearing, it

---

"[7] An evidentiary hearing was conducted by the court with reference to the defendants' request for summary relief."

cannot be concluded as a matter of fact or law that Regulation No. 541 is without a scientific basis or without a rational relationship to the furtherance of the health and welfare of the people of the State of Michigan. Thus, under the circumstances, the question presented is whether the judicial branch of government or the executive branch of government, as empowered by the Legislature, determines which of the two credible scientific opinions or procedures is likely to be the most effective for the protection of the Michigan public against disease.

"The separation of powers doctrine embodied in the basic document of our state government[8] precludes the judicial branch of government under the guise of review from exercising powers conferred upon officers of another branch of government.

"In *Moran v Detroit Board of Election Commissioners,* 334 Mich 234, 240 (1952), the following was quoted with approval by the Supreme Court of Michigan:

" ' "In accordance with the general rules governing judicial control over the acts of public officers, the judgment of municipal officers in the execution of powers conferred on them by law or charter is not subject to control and correction by the courts in the absence of fraud or a clear abuse of discretion." 37 Am Jur p 886.' Also, see: *Johnson v Fred L Kircher Co,* 327 Mich 377, 384 (1950); *Detroit v Highland Park,* 326 Mich 78, 97 (1949); *Bauman v Detroit,* 58 Mich 444, 447–448 (1885).

"With specific reference to the rule of law to be applied by the courts in determining the validity of a rule duly promulgated by a department within the executive branch of our state government, it is stated in *Sterling Secret Service, Inc v Department of State Police,* 20 Mich App 502, 514 (1969):

" 'The decisive question is whether the department has abused its rule-making authority. Our limited function here is to examine the rules and determine whether they bear a proper relationship to the legislative act. *Ranke v Corporation & Securities Commission,* [317 Mich 304 (1947)]; *Coffman v State Board of Examiners in Optometry,* [331 Mich 582 (1951)].

"8 *See* Const 1963, art 4, § 2."

" ' " "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.' " *Peaden v Employment Security Commission,* 355 Mich 613, 629 (1959), quoting *Mississippi Valley Barge Line Co v United States,* 292 US 282, 286–287; 54 S Ct 692, 694; 78 L ed 1260, 1265 (1934).' "

" 'The rules are valid so long as they are not unreasonable; and, if doubt exists as to their invalidity, they must be upheld. *Toole v Michigan State Board of Dentistry* 306 Mich 527 (1934). See also *Hiers v Detroit Superintendent of Schools,* 376 Mich 225, 234–235 (1965).'

"It is the writer's conclusion that the controlling question raised has been answered by the appellate courts of Michigan in the cases heretofore cited in this opinion, and in the case entitled *Rogowski v Detroit,* 374 Mich 408 (1965). Also see: *Jacobson v Massachusetts,* 197 US 11; 25 S Ct 358; 49 L ed 643 (1905): 2 Am Jur 2d, Administrative Law, § 651, pp 507–512. When a rational basis exists for a public health regulation it cannot be characterized as being arbitrary, and the courts are without authority to question the wisdom of the regulation or to substitute their judgment for that of the agency duly empowered to adopt it.

"The adoption of Regulation No. 541 was within the expressly conferred powers upon the Director of Agriculture, and it is neither unconstitutional nor otherwise invalid. Plaintiff's assertions that the regulation is confiscatory because it cannot with its existing facilities comply with the regulation or that compliance with it would result in the loss of customers are without merit. The evidence does not support such assertions.

"In conclusion, it is necessary to consider the effect of 1968 PA 39 on the powers of the Commission of Agriculture.

"Although there is duplicity to some extent between PA 193, *supra,* and PA 39, *supra,* there is no express repeal of any part of the former enactment by the latter enactment. However, the Legislature in adopting PA 39, *supra,* expressly limited the authority of the Commission of Agriculture's power to regulate manufacturers, processors, and packagers of food that may be

injurious to health as a result of contamination from microorganisms. The power to regulate is restricted to the processing of food that is to be distributed in the State of Michigan. Thus, Regulation No. 541 must be construed as being inapplicable to the processing of food that is prepared for distribution in interstate commerce.

"For the reasons stated herein the Court is without authority to grant the relief requested by the plaintiff. However, the defendants' application or enforcement of Regulation No. 541 to the processing of smoked fish for shipment in interstate commerce is proscribed."

Plaintiff's second argument, that regulations promulgated by the United States Food and Drug Administration have preempted state action in this area is not properly before this Court; the argument was not presented to the trial court and is raised here for the first time.

Affirmed.

LESINSKI, C. J., concurred.

Judge LEVIN did not participate.