SCHRIER v. B & B OIL CO.

1. LICENSES—BLUE SKY LAW—VOIDABLE SALES—EXCLUSIVE STATU-
TORY REMEDY.
Sales of securities made in violation of the blue sky law are
voidable at the election of the purchaser, and if voided and
tender back is made, the amount paid for the stock may be re-
covered by the purchaser in an action of assumpsit, such
remedy being exclusive and no issue of fraud, actual or con-
structive, being involved (2 Comp. Laws 1929, § 9788, as
amended by Act No. 37, Pub. Acts 1935).

2. SAME—BLUE SKY LAW—RESCISSION.
Generally, a purchaser of securities, sold in violation of the
blue sky law, who is not in pari delicto with the seller, may
rescind and recover where rights of creditors are not involved
(2 Comp. Laws 1929, § 9788, as amended by Act No. 37, Pub.
Acts 1935).

3. SAME—BLUE SKY LAW—DIRECTOR—ESTOPPEL.
Purchaser of shares of stock in a closed corporation which had
not been approved by the corporation and securities commis-
sion was estopped to recover purchase price paid therefor
where it appears that before he had completed payment for the
first of several purchases he had become a director and vice-
president of the corporation and actively participated in deter-
mining the policy of the corporation including authorization to
increase the capital stock and did not attempt to recover in-
vestment until the company began to lose money since. he is
not entitled to protection as an innocent member of the public
(2 Comp. Laws 1929, § 9788, as amended by Act No. 37, Pub.
Acts 1935).

Appeal from Kalamazoo; Weimer (George V.), J.
Submitted January 10, 1945. (Docket No. 11, Cal-
endar No. 42,818.) Decided April 9, 1945.

Action by Harold D. Schrier against B & B Oil Company, a corporation, and others to recover money paid for stock in defendant company sold in violation of blue sky law and as a result of fraud. Verdict for defendants. New trial granted on fraud count and judgment for defendants on blue sky law violation count. Plaintiff appeals. Affirmed.

*Frost, Frost & Ford (Gerald T. Wiley,* of counsel), for plaintiff.

*Howard, Howard & Howard,* for defendants.

BUSHNELL, J. Beginning in June of 1940, defendants Robert Buss and George J. Bolender were copartners in a fuel oil business in Kalamazoo. On May 1, 1941, these two defendants, together with their wives, formed B & B Oil Company, a Michigan corporation, which succeeded to the business of the partnership. Sometime during May, 1941, Buss and plaintiff Harold D. Schrier had a talk about the fuel oil business, and Buss stated to Schrier that Bolender was without experience, and his only contribution to the enterprise was to provide a part of the capital. Schrier is a petroleum engineer, in the employ of the Standard Oil Company of New Jersey. He has lived in Kalamazoo all his life. Buss explained that, with the aid of Schrier's practical experience, the business, although then making a nice profit, could be expanded. Schrier, after making some inquiries regarding Buss' representations, gave Buss his check for $3,000 on June 24, 1941, in payment of 3,000 shares of common stock of the company. Prior to the date of this check a stockholders' meeting had been held on June 11th, at which Schrier was present, when the bylaws of defendant company were amended to reduce the number of directors from four to three. At this

meeting the resignations of directors Emily Buss
and Inez M. Bolender were accepted and Schrier was
elected to the vacancy on the board. On June 16th
the directors accepted the resignation of Bolender
as vice-president and Schrier was elected in his
place. A meeting of the stockholders was held on
September 19th, at which Schrier moved to amend
the bylaws of the corporation to increase the number
of directors to four, and W. Kent Kidder was elected
to the vacancy. On the same day, at the directors'
meeting at which Schrier was present, Kidder moved
that a service and management charge of $8\frac{1}{2}$ per
cent. per annum on $20,000 be charged to the serv-
ice station at 355 E. Kalamazoo avenue, and, on
Bolender's motion, regular meetings were provided
for and it was agreed that each director in attend-
ance should receive a fee of $10.

At a meeting in October, on motion of Kidder, the
capital stock of the company was increased to
$40,000, and Schrier, together with Buss, Bolender
and Kidder, subscribed and paid $2,800 for 2,800
shares each, of the increase thus authorized. On
Schrier's motion, a cash dividend of 6 per cent. on
the increased capitalization was ordered payable in
four instalments during the succeeding 12 months.
At a special meeting of the stockholders in Novem-
ber, on Schrier's motion, the purposes of the cor-
poration were broadened and the authorized capital
stock was increased to $100,000. In November,
Schrier reported the purchase of equipment for
service station No. 2 at a cost of approximately
$6,000, and, upon his motion, such purchase was
ratified. At the December meeting certain difficul-
ties with one E. H. Graff were discussed and action
taken. At the adjourned meeting that same month
it was agreed that equipment for recapping and re-
treading tires be acquired at a price of $7,300, plus

freight. In January the purchase of vulcanizing equipment was authorized and alteration of the service station and purchase of other equipment discussed. At both a regular and an adjourned meeting in February, business in connection with service station No. 1 was discussed, and in March, on Schrier's motion, radio advertising was authorized. The April and May meetings were devoted to a discussion of company business in general, and the June meeting to the purchase of supplies of fuel oil for the 1942–1943 season. In July a new agreement as to rentals was entered into with Graff upon Schrier's motion, and at the annual stockholders' meeting in July, Schrier was re-elected a director, together with Buss, Bolender and Kidder, and was re-elected vice-president at the directors' meeting which followed. He was appointed on a committee, with power to act regarding the operation or disposition of service station No. 2. He participated in two meetings in August, and after the last of these, on August 12, 1942, the record is silent as to any further connection with the affairs of the company. However, Schrier attended each of the regular and special meetings of the directors and stockholders from June 11, 1941, to the meeting of August 12, 1942, and participated in the conduct of the general business of the corporation at those meetings.

Schrier's first investment of $3,000 in the stock of the company was made, according to the minute book, after he had been elected a director and vice-president. The second investment in the sum of $4,200 was made on July 24, 1941, and his last investment of $2,800 was made after he had participated with others in authorizing an increase in the capital stock of the company.

On December 7, 1942, Schrier began an action at law against the company, Buss and Bolender for

repayment of the total amount of his investment, charging in the first count of his declaration that the stock he purchased was not and had not been accepted for filing by the Michigan Corporation & Securities Commission, as required by the provisions of Act No. 220, Pub. Acts 1923, and amendments thereto,* otherwise known as the Michigan blue sky law, and that this stock was not exempt from the provisions of the act and its sales were made in direct violation thereof. In his second count he claimed the right to recover on the grounds of false and fraudulent representations.

After the testimony had been received, much of which had to do with the fraud count, the circuit judge submitted the matter to a jury, which returned a verdict in favor of defendants on both counts. The trial judge later denied Schrier's motion for judgment notwithstanding the verdict, and granted his motion for new trial. When the court's attention was later called to the certain claimed errors in the charge, he vacated his former order and then denied a new trial on the first "blue sky" count, and entered a judgment on this count for the defendants. He then granted plaintiff a new trial on the second or "fraud" count.

Schrier insists on appeal that the record contains clear and undisputed evidence that the stock was sold to him in violation of the blue sky law, and that, his rescission having been made, tender made and suit for recovery of the purchase price brought within two years from the purchase of the stock, he is entitled to a new trial on his first count. He denies that his participation in the affairs of the company constitutes an election to affirm the sale.

---

* See 2 Comp. Laws 1929, § 9769 *et seq.* (Stat. Ann. § 19.741 *et seq.*).—Reporter.

The applicable portion of the blue sky law is section 20, 2 Comp. Laws 1929, § 9788, as amended by Act No. 37, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 9788, Stat. Ann. § 19.760), which reads:

"Every sale or contract for sale of any security, not accepted for filing or otherwise exempt under this act or made contrary to any order of the commission, or made contrary to any provision of this act, shall be voidable at the election of the purchaser, and the person making such sale or contract for sale, and every agent of or for such seller who shall have participated or aided in any way in making such sale, shall be jointly and severally liable to such purchaser, upon tender to the seller or in court of the securities sold or of the contract made, for the full amount paid by such purchaser, together with all taxable court costs, in any action brought under this section. *Provided,* That no action shall be brought for the recovery of the purchase price after two years from the date of such sale or contract for sale. No purchaser otherwise entitled shall claim or have the benefit of this section, who, having knowledge of the fact that such sale was made in violation of the provisions of this act shall have refused or fail [ed?] within a reasonable time to accept the voluntary offer of the person making the sale to take back the securities in question and to refund the full amount paid by such purchaser."

In *Barth* v. *Klicpera,* 248 Mich. 460, the court said:

"Sales made in violation of the statute are voidable at the election of the purchaser, and if voided and tender back is made, the amount paid for the stock may be recovered. The statute penalizes violations of its provisions, and awards a specific civil remedy for recovering the money paid, and such remedy is exclusive. At the election of the purchaser the statute makes it the duty of the seller to

repay what he has received and grants an action for the recovery of the money or other consideration *had and received.* It is optional with the purchaser to retain the stock, or tender it back and be entitled to recover what has been paid. The right to rescind the purchase is statutory, and involves no issue of fraud, actual or constructive. The remedial action is also statutory, and does not sound in tort. The statute grants right of recovery in an action of assumpsit."

Recovery was denied against the surety on the bond of a dealer in *Moore* v. *Mitchell,* 278 Mich. 10, on the ground that "the blue sky law was intended to afford protection only to innocent members of the public."

The general rule is that a purchaser of securities, sold in violation of the act, who is not in *pari delicto* with the seller, may rescind and recover where rights of creditors are not involved. See 47 Am. Jur. p. 595, and authorities annotated in 87 A. L. R. 42 *et seq.* See, also, 14 Fletcher, Cyclopedia of Corporations (Perm. Ed.), §§ 6763–6766.

The facts disclosed in this record do not fall within the general rule either as to sale to the public or such participation in the affairs of the corporation by the purchaser that would not estop him from recovery.

We have, on the other hand, a situation involving a closed corporation in which Schrier became a stockholder within a very short time after it was formed. He did not complete his original stock purchase until after he had been elected a director and vice-president. He not only attended each and every meeting of the directors and stockholders between the date of his purchase and his rescission, nearly 14 months later, but he had much to do with determining the policy of the corporation. At one

time he personally managed one of the company's gasoline super-stations and received a salary for his part-time services. Upon another occasion he purchased retreading and recapping equipment for the company, and when he later arranged its sale to another, he made a secret profit thereon. He participated in the authorization of increases of capital stock, and was a responsible officer of the company at the time when it was as much his duty as that of any other officer to see that the increased issue was approved by the commission.

It is fair to conclude that, had the company continued to make a profit, there would have been no complaint from Schrier. It was only when it began to lose money that he attempted to recover his investment. It cannot be said that Schrier is entitled to protection as an innocent member of the public.

We express no opinion as to the fraud phase of the case, that not being before us. On the facts disclosed by this record, Schrier is estopped, by his conduct, from recovering under the provisions of the "blue sky law."

We have considered authorities cited from other jurisdictions, especially *Hudson* v. *Silver,* 273 Ill. App. 40, which support appellant's argument. In that case plaintiff Hudson was a director and had participated in the management of the affairs of the corporation. Defendants Silver and Bunge had jointly participated in negotiating and furthering the sale of the stock in question, and Silver had made at least 75 sales of this stock to many persons upon which sales he had been paid a commission by Bunge. We are unable to accept the reasoning of the Illinois court as being applicable to the facts in the instant case.

The order from which Schrier has appealed is affirmed, with costs to appellees, and the cause is remanded for a new trial on the fraud count.

STARR, C. J., and NORTH, WIEST, BUTZEL, SHARPE, BOYLES, and REID, JJ., concurred.