MOORE *v.* MANUFACTURERS SALES COMPANY.

1. LICENSES—STOCK SOLD IN VIOLATION OF BLUE SKY LAW—OPTION OF PURCHASER.
    It is optional with the purchaser of stock of a corporation which has been sold in violation of the blue sky law to retain the stock or tender it back and be entitled to recover what has been paid (CL 1948, § 451.120).

2. SAME—ESTOPPEL OF PURCHASER.
    Plaintiff who became an officer and director of corporation as part of his agreement to purchase of some of its stock became estopped by reason of his position and subsequent conduct from recovering purchase price of such stock, notwithstanding his election to rescind came within 2 years after his purchase of stock (CL 1948, § 451.120).

Appeal from Muskegon; Verdier (Leonard D.), J. Submitted October 16, 1952. (Docket No. 67, Calendar No. 45,613.) Decided January 5, 1953.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 47 Am Jur, Securities Acts §§ 40, 42.
[1, 2] Blue Sky Laws, 87 ALR 42, 98.

Action by Charles F. Moore against Manufacturers Sales Company, a Michigan corporation, and others for sales price of stock sold in violation of blue sky law. Judgment for defendants. Plaintiff appeals. Affirmed.

*Balgooyen, Parmenter & Forsythe,* for plaintiff.

*Alexis J. Rogoski, Robert Bunker Rogoski* and *Lester S. Smith,* for defendants Strifling.

*Street & Sorensen,* for other defendants.

Butzel, J.   Charles F. Moore, plaintiff, brought suit against Manufacturers Sales Company, a Michigan corporation, Fred L. Rodoff, Mildred S. Rodoff, Joe S. Strifling and Syd F. Strifling, defendants, to recover $12,000, the amount paid by plaintiff for 70 shares of preferred stock and 50 shares of common stock, each class of shares having a par value of $100 per share.  Recovery is sought on the claim that each of the defendants participated in inducing plaintiff to purchase the stock, which had not been accepted for filing by the Michigan corporation and securities commission in accordance with the blue sky law (CL 1948, § 451.101 *et seq.* [Stat Ann and Stat Ann 1951 Cum Supp § 19.741 *et seq.*]).  Corporate defendant apparently was a close corporation with a half dozen or less stockholders.  Plaintiff was willing to invest in it but wanted a position where he would receive a fair salary and also participate in the management.  For almost a month he considered the investment and also had legal advice in regard to it.  He acknowledges that he had had some experience in corporate matters.  A contract was finally agreed upon.  The corporation was not in good financial condition and defendants Strifling agreed to surrender and sell back to Rodoff $10,000

of preferred stock and notes of $9,400 representing amounts due them from the company for the sum of $100, all of which Rodoff was to sell to the corporation for $100. The preferred stock was returned to the treasury of the company, and was reissued to plaintiff. The contract, as drawn, provides that plaintiff was to become secretary and treasurer and a director of the company. Plaintiff attended a stockholders' meeting on April 26, 1950. Mr. and Mrs. Strifling did not attend the meeting, as Mr. Strifling was recovering from a very serious sickness. However, they had signed a waiver of notice of the meeting. They claimed that they had absolutely nothing to do with the sale of the stock to plaintiff. They did surrender $10,000 of preferred stock for a nominal amount and released the company from an obligation, all in order to restore the company to solvency. A fair inference is that they were motivated by friendship for Rodoff who had been, and continued to be, largely in control of the corporation's affairs. On the same morning, after the stockholders' meeting took place, at which plaintiff was elected director and the contract for employment was entered into, a directors' meeting was held and plaintiff was elected secretary and treasurer of the company. It was not until after this directors' meeting that the stock was issued to plaintiff, he signing his own stock certificate. There is no question but that he had ample opportunity to make an examination of the company's affairs. The books evidently omitted certain liabilities but it is doubtful if this materially affected the company's condition. Plaintiff does not claim any fraud in his pleadings. In June, 1950, he admitted knowing all about the financial condition and he also told defendants Strifling that he was still of the opinion that the business would become profitable. On July 2, 1950, at a meeting of the directors, plaintiff voted

himself an increase of salary. On July 27, 1950, one Harold A. Silverman, who was a stockholder in the company, brought suit to recover $6,000, claiming that he had purchased stock that had not been accepted for filing by the Michigan corporation and securities commission under the blue sky law. Thereupon the bank account of the company was transferred to plaintiff's name so as to avoid its being "attached" by Silverman. Plaintiff continued in the employ of the company. On December 26, 1950, he began the present action against the defendants, basing his entire claim on the violation of the blue sky law. However, he did not leave the employ of the company until February, 1951. Just how much salary he received is not disclosed by the record. Prior to the beginning of this suit he seized $2,200 worth of salable merchandise to reimburse himself for loans made to the company.

This action is brought under section 20 of the act (CL 1948, § 451.120 [Stat Ann § 19.760]), which provides:

"Every sale or contract for sale of any security, not accepted for filing or otherwise exempt under this act or made contrary to any order of the commission, or made contrary to any provision of this act, shall be voidable at the election of the purchaser, and the person making such sale or contract for sale, and every agent of or for such seller who shall have participated or aided in any way in making such sale, shall be jointly and severally liable to such purchaser, upon tender to the seller or in court of the securities sold or of the contract made, for the full amount paid by such purchaser, together with all taxable court costs, in any action brought under this section: Provided, That no action shall be brought for the recovery of the purchase price after 2 years from the date of such sale or contract for sale. No purchaser otherwise entitled shall claim or have the benefit of this section, who, having knowl-

edge of the fact that such sale was made in violation of the provisions of this act shall have refused or fail within a reasonable time to accept the voluntary offer of the person making the sale to take back the securities in question and to refund the full amount paid by such purchaser."

"It is optional with the purchaser to retain the stock, or tender it back and be entitled to recover what has been paid." *Barth* v. *Klicpera,* 248 Mich 460.

The trial judge denied plaintiff recovery on the ground that he was *in pari delicto* and estopped, basing his decision squarely on that of *Schrier* v. *B & B Oil Company,* 311 Mich 118. Plaintiff on appeal claimed that the *Schrier Case* presented facts so different and distinguishable from the ones in the instant case that it is no authority whatsoever for the judge's decision. In the *Schrier Case* the purchaser of stock attended a meeting of stockholders at which the bylaws were amended to provide for his being elected a member of the board of directors and he was so elected. Five days later he was elected vice-president of the corporation. Eight days later he purchased part of his stock and more shortly thereafter. He took an active part in the corporate affairs, voted for a subsequent increase of the capital stock and bought part of the increase. At one time, while active in the corporation's affairs, he managed one of its filling stations and received a salary for his part-time services. We held that Schrier was estopped by his conduct from recovering for any of his purchases of stock under this section of the blue sky law. When plaintiff became an officer it became incumbent upon him to see that no stock was sold without compliance with the blue sky law. Even after it was called to his attention by the Silverman suit that there was a failure to comply with

the blue sky law in issuing the stock, he failed to elect to rescind his own purchase. He withdrew the money from the bank so as to prevent its attachment by Silverman. He then continued as an officer with salary for almost 4 months before beginning suit, and still continued to hold his position for some time thereafter. His first effort to rescind came only after a proposal had been made to put the corporation into bankruptcy. It is true that under the blue sky law, *supra*, the purchaser has 2 years in which to surrender his stock and begin suit, but in the instant case plaintiff himself signed his own stock certificate, had full opportunity to examine the company's affairs, was secretary-treasurer and active in the management, continued to act even after the Silverman suit was begun, and under the circumstances was not only *in pari delicto* in issuing the stock but his subsequent conduct was such as to estop him from now claiming any money under the act. This case is controlled by *Schrier* v. *B & B Oil Company, supra.*

Judgment is affirmed, with costs to defendants.

DETHMERS, C. J., and ADAMS, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.