WILLIAM'S DELIGHT CORPORATION v HARRIS

Docket No. 77-997. Submitted January 18, 1978, at Detroit.—Decided November 27, 1978.

Plaintiff, William's Delight Corporation, is a corporation organized under the laws of the Virgin Islands and is apparently qualified to do business in Michigan. Its purpose was to carry out a real estate development program of purchase of land in the Virgin Islands and the construction of condominium units. In conjunction with its incorporation plaintiff contacted 14 persons in Michigan, including defendant Fred L. Harris, for the purpose of investing. The offering brochure indicated Mr. Harris as an investor who would also act as legal adviser and Mr. Harris subsequently became secretary of the corporation. Plaintiff sued defendant to recover on an alleged agreement to purchase shares of plaintiff. Defendant denied any such agreement and asserted that, even if an agreement did exist, plaintiff might not sue upon it and, in the alternative, it was voidable for failure to comply with the Michigan Uniform Securities Act. Defendant moved to dismiss and the Oakland Circuit Court, Frederick C. Ziem, J., finding that plaintiff had failed to comply with the registration requirements of the securities law and did not meet the exemption requirements for preincorporation subscriptions, granted defendant's motion. Plaintiff appeals. *Held:*

1. The general exemption statute exempting from registration any transaction pursuant to an offer to not more than 15 persons in this state during any 12-month period does not apply to the offer of preorganization subscriptions.

2. Where a seller can establish its own unwitting violation of the securities law and the purchaser's culpable involvement or acquiescence in it, no public policy is thwarted by allowing a suit upon the purchase contract.

Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES

[1] 18 Am Jur 2d, Corporations §§ 46, 356, 357, 359.
[2] 73 Am Jur 2d, Statutes § 257.
[3] 1 Am Jur 2d, Actions §§ 53, 54.

1. CORPORATIONS—STATUTES—SECURITIES—REGISTRATION OF SECURI-
TIES—SUBSCRIPTIONS—PREINCORPORATION SUBSCRIPTIONS—EX-
EMPTION FROM REGISTRATION.

The general exemption statute exempting from registration any
transaction pursuant to an offer to not more than 15 persons in
this state during any 12-month period does not apply to the
offer of preorganization subscriptions (MCL 451.802[b][9]; MSA
19.776[402][b][9]).

2. STATUTES—CONSTRUCTION—GENERAL AND PARTICULAR PROVISIONS.

The general provisions of a statute also containing particular
provisions at variance with the general provisions will be
construed as being controlled by the particular provisions and
will be applied to affect only such cases as are not within the
particular provisions.

3. CORPORATIONS—STATUTES—SECURITIES—ACTIONS—CONTRACTS—BAR
TO ACTIONS.

The statute barring a suit based on a contract made or performed
in violation of any provision of the securities law does not bar a
seller from suing on a contract where the seller can establish
its own unwitting violation of the law and purchaser's culpable
involvement or acquiescence in it (MCL 451.810[f]; MSA
19.776[410][f]).

*Berry, Moorman, King, Lott & Cook, P.C.* (by
*Francis J. Newton, Jr.),* for plaintiff.

*Paul G. Valentino, J.D., P.C.,* for defendant.

Before: T. M. BURNS, P.J., and M. F. CAVANAGH
and D. C. RILEY, JJ.

M. F. CAVANAGH, J. Plaintiff, William's Delight
Corporation, is a corporation organized under the
laws of the Virgin Islands and apparently qualified
to do business in Michigan. In 1969 it was incorpo-
rated to carry out a real estate development pro-
gram for the purchase of land and the construc-
tion of condominium units in the Virgin Islands.
Pursuant to this program, plaintiff contacted 14
persons in Michigan, including defendant Harris,
for the purpose of investing in the corporation.

From the record, it is unclear whether all 14 offers were made prior to the plaintiff's incorporation.

Plaintiff's offering brochure indicated defendant Harris as an investor who would also act as legal advisor, performing a variety of legal duties connected to the plaintiff's organization. He subsequently became secretary of the corporation as well.

The corporation has brought suit against the defendant, alleging he had failed to complete his agreement to purchase 250 shares in the amount of $25,000. Defendant moved to dismiss the complaint, denying, first, that such an agreement ever existed, and second, arguing that even if it did, plaintiff could maintain no suit on the contract and/or it was voidable by him because of plaintiff's failure to comply with the Michigan Uniform Securities Act, MCL 451.501 *et seq.;* MSA 19.776(101) *et seq.*

The court below granted the motion, finding that the plaintiff had failed either to comply with the act's registration provision, (MCL 451.701; MSA 19.776(301)) or to meet the exemption requirements for preincorporation subscriptions under the same act (MCL 451.802(b)(10); MSA 19.776(402)(b)(10)).

On appeal, plaintiff corporation raises essentially the same arguments it raised to the trial court: (1) the transaction in question, while it does not fall within the exemption for preincorporation certificates or subscriptions, did meet the more general provisions of MCL 451.802(b)(9); MSA 19.776(402)(b)(9), and was therefore exempt from registration; (2) in any event, the defendant should be estopped from asserting the agreement's invalidity. Plaintiff argues that as its legal advisor, defendant had the responsibility to insure the

corporation's compliance with Michigan security law, and thus cannot be heard to assert its failure to do so to avoid his obligation on the contract. The trial court did not rule on the plaintiff's second contention, apparently finding the first dispositive of the case. We will consider both arguments in turn.

Plaintiff first argues that if a sale of preincorporation subscriptions exceeds the limits set out in MCL 451.802(b)(10); MSA 19.776(402)(b)(10), thus failing to meet the specific registration exemption for such subscriptions under that section, it may nevertheless still meet the more general terms of MCL 451.802(b)(9); MSA 19.776(402)(b)(9) and qualify for exemption from registration.

MCL 451.802(b)(10) provides:

"Any offer or sale of a preorganization certificate or subscription, and *the issuance of securities pursuant thereto,* if:

* * *

"(B) The number of subscribers does not exceed 10 * * * ." (Emphasis added.)

By contrast MCL 451.802(b)(9) more generally exempts from registration:

"Any transaction pursuant to an offer directed by the offeror to not more than 15 persons * * * in this state during any period of 12 consecutive months * * * ."

As used in the latter provision, "offer" includes every attempt or offer to buy or sell a security, which according to the definitional sections of the act, does encompass a preorganization subscription. MCL 451.801(j)(2); MSA 19.776(401)(j)(2). By reading these three sections together, plaintiff constructs an elaborate carry-over scheme, which in

effect allows the offeror to straddle the two exemptions, thus enjoying the benefit of each.

The interpretation of these two exemption sections is one of first impression in this state and apparently also in the other jurisdictions that have adopted the Uniform Securities Act. After examining the available authority, we conclude that the trial court was correct in ruling that MCL 451.802(b)(10) alone applied to the transaction in question.

First, we disagree with plaintiff's argument that the two sections are interrelated. While this contention has merit when applied to the Uniform Securities Act, it fails to comprehend the import of the changes made in the Michigan version of § 402(b)(10).

The uniform provision exempts the offer or sale of preincorporation subscriptions, but not the issuance of stock itself, unless another exemption is available. One such exemption is § 402(b)(9), which will exempt the issued stock, assuming that the number of original offers of subscriptions did not exceed ten. In Michigan, however, there is no need to resort to both exemptions, because MCL 451.802(b)(10), specifically exempts both the offer or sale of the subscriptions *and* the issuance of the securities. See Loss, *Commentary on the Uniform Securities Act,* pp 130–131 (1976).

It is unlikely also that the Legislature intended to allow an offeror to stack exemptions by employing a carry-over device. First, such devices enable offerors or sellers to evade the act's registration requirements, thus undermining its investigative and protective purpose.[1] *People v Dempster, 396*

---

[1] Under Federal securities law, the "stacking" of exemptions is expressly prohibited, particularly where the claimed exemptions may apply to an "integrated offer" that is, ostensibly separate offerings which are in reality one financing plan, cover the same type of

Mich 700; 242 NW2d 381 (1976). Secondly, the provisions are designed to achieve two distinct results. As the Official Comments to the Uniform Securities Act indicate, MCL 451.802(b)(10); MSA 19.776(402)(b)(10), limits only the number of eventual subscribers, not offerees, thereby allowing the organizers to publicly advertise and inform a large number of investors of an investment opportunity. With this object in mind, it would be counterproductive to permit the carry-over of excess offers and subject them to the stricter terms of MCL 451.802(b)(9); MSA 19.776(402)(b)(9). It is much more logical to view the limits on offers in this provision as directed towards post-incorporation offers of securities to enable a corporation, which may not desire a major public financing campaign, to attract additional investors yet avoid the expense of registration. Securities Rule 451.802.3[2] supports this interpretation by indicating that § 802(b)(9) is aimed at post-incorporation *offers,* not merely the conclusion of transactions pursuant to offers made at any time by an issuer. Thus, the mere fact that Harris "cemented" his contractual liability after plaintiff's incorporation is insufficient to bring the transaction within the rule especially since the offer itself was couched in terms of a preincorporation proposal.

securities and were made at or about the same time, for the same purpose. *See* SEC Release No. 33-4552 (Nov. 6, 1962), 27 FR 11316, *Bowers v Columbia General Corp,* 336 F Supp 609 (D Del, 1971).

[2] This rule states:

"Only transactions effected in compliance with this rule are exempt under section 402(b)(9) of the act * * * . The following transactions * * * are exempt under this rule:

"(a) Transactions pursuant *to offers* of its securities, regardless of type or class, by an *incorporated issuer directed to an aggregate of not more than 15 persons* in this state during the initial period of 12 months after incorporation, and to an aggregate of not more than 10 persons during any subsequent period of 12 consecutive months." 1954 Michigan Administrative Code 4809 (Supp 1968).

Finally, we agree that

"Where there is in the same statute a specific provision, and also a general one which in its most comprehensive sense would include matters embraced in the former, the particular provision must control, and the general provision must be taken to affect only such cases within its general language as are not within the provisions of the particular provision."

*Evanston YMCA Camp v State Tax Comm,* 369 Mich 1, 8; 118 NW2d 818 (1962), *Dossin's Food Products, Inc v State Tax Comm,* 360 Mich 312; 103 NW2d 474 (1960), *McKenna v Chevrolet-Saginaw Grey Iron Foundry Division, General Motors Corp,* 63 Mich App 365; 234 NW2d 526 (1975), *lv den,* 395 Mich 827 (1976). The subscriptions at issue here clearly fell within the provisions of the narrower exemption and should be governed by it. Plaintiff's failure either to qualify for the exemption or register constituted a violation of the act.

MCL 451.810(f); MSA 19.776(410)(f) prevents a party from basing any suit upon a contract made or performed in violation of any provision of the Uniform Securities Act. However, the plaintiff urges here, as it did below, that the defendant be estopped from asserting the violation of MCL 451.701; MSA 19.776(301) as a defense to its action for damages for breach of contract, relying mainly on the authority of *Schrier v B&B Oil Co,* 311 Mich 118; 18 NW2d 392 (1945).

Generally speaking, estoppel cannot be used to enforce an illegal contract or allow its rescission if the contract offends a public policy embodied in a statute. *Leland v Ford,* 245 Mich 599; 223 NW 218 (1929). Where contracts for sale of securities in violation of state Blue Sky laws have been made, a number of jurisdictions have followed the general

rule, mainly in suits for rescission brought by purchasers of these securities. Normally, the aggrieved purchasers, even if not free of wrongdoing, have been allowed to rescind the illegal contract and recover any money paid under it.[3]

Michigan, however, has developed a jurisprudence in such cases which recognizes that in certain circumstances, the policy embodied in the state securities' laws is better served by a more flexible approach. One line of cases, decided under the statutory scheme replaced by the Uniform Security Act,[4] permitted the assertion of an estoppel argument against a purchaser seeking to rescind an agreement violative of the act, on the grounds that the parties were *in pari delicto,* and should be left as the court found them. This conclusion was based in part on the finding that the act's protection of innocent purchasers did not extend to one who was aware of the violation but who had made no attempt to rescind until his investment became unprofitable. The ultimate result in these cases is thus to allow the seller, who has the duty to comply with the securities' regulations, to retain the purchase price. *Schrier v B&B Oil Co, supra, Moore v Manufacturers Sales Co,* 335 Mich 606; 56 NW2d 397 (1953), *DePolo v*

---

[3] *Loewenstein v Midwestern Investment Co,* 181 Neb 547; 149 NW2d 512 (1967), *Randall v California Land Buyers Syndicate,* 217 Cal 594; 20 P2d 331 (1933). See generally, 3 Loss, Securities Regulation (2d ed), pp 1677–1679, n 231–237, and cases cited therein. Most of the above-cited cases discuss the applicability of estoppel and *in pari delicto* to contracts made in violation of various state securities laws. However, courts tend to resist finding that the purchaser's conduct has placed him *in pari delicto* and prevented his recovery, emphasizing the necessity of equal culpability and the purpose behind Blue Sky regulations. One California court noted that the doctrines of estoppel/ *in pari delicto* applied only in extreme cases where the purchaser actually participated in fraudulent securities practices. *Taormina v Antelope Mining Corp,* 110 Cal App 2d 314; 242 P2d 665 (1952).

[4] 1948 CL 451.103 *et seq.*

*Greig,* 338 Mich 703; 62 NW2d 441 (1954). Using somewhat different reasoning to reach the same result, this Court, in *Walton v Semmler,* 6 Mich App 596; 149 NW2d 885 (1967), simply found that a purchaser who did not attempt to repudiate his agreement until sued thereon also fell outside the scope of the act.

In the above cases, the sale of securities were admittedly in violation of Michigan security laws. Nevertheless, the court estopped the purchaser from asserting the violation by focusing on such factors as his business acumen, the nature and degree of his involvement in the seller's management, his familiarity with securities regulations and/or the seller's failure to comply and his opportunity for independent legal advice. Thus, the common thread uniting these cases is that the purchaser urging the violation in some sense participated in the wrongdoing.

A similar result is urged here, albeit in the context of a seller's action to enforce a purchase agreement. Plaintiff-seller alleges that the defendant's failure to advise the corporation in regard to compliance with Michigan security law places him *in pari delicto* with the plaintiff. His conduct should thus estop him from asserting the transaction's illegality thus requiring him to honor his contractual obligation to purchase stock subscriptions. Defendant asserts that if the parties are *in pari delicto,* the proper result is to leave all concerned as the court finds them.

While we agree with defendant that plaintiff has partially misapprehended the *in pari delicto* doctrine and that, if both parties equally participated in the violation, this Court should grant relief to neither, we have no basis on the present record for reaching this result. Nor, on the other hand, are

we able to ascertain whether the defendant's conduct in this matter was so egregious as to estop him from asserting the plaintiff's violation of Michigan's security laws. We would therefore remand for the trial court's consideration whether or not the defendant should be estopped to urge the contract's invalidity as a defense to the plaintiff's action and for a determination of whether the parties are *in pari delicto.* In making this determination, the trial court should consider those factors noted above as equally applicable to plaintiff and defendant.

Arguably, the mere showing of a technical violation of the act may be sufficient for finding a plaintiff-seller *in pari delicto,* thus barring him from suing on his contract under MCL 451.810(f); MSA 19.776(410)(f), even where there is great disparity in the relative degrees of culpability between the parties. We are persuaded that such a rule can, in these circumstances, be overbroad. We thus agree with the statements of the California court that:

"In some cases, * * * effective deterrence is best realized by enforcing the plaintiff's claim rather than leaving the defendant in possession of the benefit; or the forfeiture resulting from unenforceability is disproportionately harsh considering the nature of the illegality. In each such case, how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved."

*Smith v Turner,* 238 Cal App 2d 141, 152; 47 Cal Rptr 582, 589 (1965). Accord, *Groves v Jones,* 252 Mich 446, 450–451; 233 NW 375 (1930). Nor are we concerned that allowing a seller to avail himself of the estoppel doctrine will thwart the purpose behind the Michigan Uniform Securities Act. This

act, like the Federal securities acts, is aimed at protecting the innocent purchaser. *Schrier, supra, Walton, supra, A C Frost & Co v Coeur D'Alene Mines Corp,* 312 US 38; 61 S Ct 414; 85 L Ed 500 (1941). Certainly, in the vast majority of cases, the purchaser will normally fall within the act's protection and the seller will be barred from basing suit on his contract. But where the seller can establish its own unwitting violation of the act and the purchaser's culpable involvement or acquiescence in it, no public policy is thwarted by allowing the suit. See *Walton, supra, Straley v Universal Uranium & Milling Corp,* 289 F2d 370 (CA 9, 1961), *Royal Air Properties, Inc v Smith,* 312 F2d 210 (CA 9, 1962). By so limiting our holding to such situations, the spirit and purpose of the act is maintained.

Reversed and remanded.