**INVESTORS EQUITY GROUP,**
a Michigan corporation,
Plaintiff,

v.

**ROSENKRANTZ LYON & ROSS, INC.,** a foreign corporation, **Kamal Hughes, Universal Symetrics Corporation,** a foreign corporation, **Juris Mednis** and **Leslie Wicks,** jointly and severally, Defendants.

No. 5:90–CV–43.

United States District Court,
W.D. Michigan, S.D.

April 22, 1993.

Michael H. Perry, Iris K. Socolofsky, Fraser, Trebilcock, Davis & Foster, PC, Lansing, MI, for plaintiff.

Phillip J. Neuman, Jacob & Weingarten, PC, Troy, MI, Scott K. Nigro, Feinberg,

Felzen & Nigro, New York City, Jerome F. Rock, Grosse Pointe, MI, for defendants.

## OPINION

QUIST, District Judge.

Plaintiff Investors Equity Group filed this diversity action against defendants Rosenkrantz, Lyon & Ross, Inc. and Kamal Hughes. Plaintiff alleges that the defendants sold securities to him in violation of the Michigan Blue Sky Laws which require either registration or exemption from registration.[1] Plaintiff seeks rescission of the sale and recovery of the purchase price, together with interest and attorneys' fees. This Court held a bench trial on February 9 and 10, 1993. The following opinion contains the findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a).

## BACKGROUND FACTS

Plaintiff Investors Equity Group, Inc. (IEG) is a Michigan corporation involved in the commercial real estate business. Roger Thornburg is the president and sole shareholder of IEG. Defendant Rosenkrantz, Lyon & Ross, Inc. (RLRI) is a licensed stock brokerage firm. Defendant Kamal Hughes (Hughes) is an account executive employed by RLRI at its branch office in Chicago.[2] This action arises out of the plaintiff's purchase of certain investments in Universal Symetrics Corporation and Chronodynamics, Ltd.

On September 12, 1989, the defendants sold IEG 2,600 shares of Chronodynamics stock at the price of $3.125 per share, amounting to a total investment of $8,127. On September 19, 1989, IEG purchased another 12,500 shares of Chronodynamics stock from the defendants at $3.00 per share, for a total investment of $16,500.

During a telephone conversation Mr. Thornburg, the president of IEG, discussed additional investment opportunities with Mr. Hughes, an account executive with RLRI. Mr. Hughes suggested that IEG invest in Universal Symetrics Corporation (Universal). He explained that the Universal situation was similar to the Chronodynamics investment. Mr. Thornburg had never heard of Universal prior to this telephone conversation. Mr. Thornburg testified on direct examination that this telephone conversation with Mr. Hughes took place a week or two before he invested in Universal.

On September 21, 1989, IEG executed a Subscription Agreement to invest $250,000 in Universal and tendered a check in that amount to Universal's escrow agent. The Agreement read in part:

The undersigned understands that Universal Symetrics Corporation (the "Company") is a New Jersey corporation, has sustained operating losses to date and may incur additional losses in the future. The Company cannot give any assurance that its operations will ultimately be profitable. An investment in the Company's securities involves a high degree of risk, including the possibility of losing an entire investment.

Prior to accepting the Subscription Agreement, Mr. Dan Purjes, the president of RLRI, had two telephone conversations with Mr. Thornburg. The first call took place on September 25, 1989. According to Mr. Purjes, Mr. Thornburg told Mr. Purjes that he (Mr. Thornburg) was interested in highly speculative investments and that five million dollars was a reasonable estimate of his net worth. He also stated that he was the sole shareholder of IEG. He explained that IEG was a company involved in real estate offerings which required disclosure documents similar to the ones required by the Universal transaction. Mr. Thornburg acknowledged that he had not read the Confidential Private Offering Memorandum dated July 21, 1989,

---

1. The Plaintiff's complaint also alleged claims of fraud. The fraud claims were dismissed by the Court in an oral decision from the bench on February 10, 1993.

2. This case originally involved three additional defendants: Universal Symetrics Corporation

(Universal); Juris Mednis, the Chairman and Chief Executive Officer of Universal; and Leslie Wicks, President of Universal. However, the action has been stayed as to these defendants due to bankruptcy.

(CPOM) which described the offering. Mr. Purjes testified that he asked Mr. Thornburg to read the memorandum and call him back if he still wanted to invest. The topic of registration or exemption was never discussed.

On September 27, 1989, Mr. Thornburg called Mr. Purjes and confirmed his desire to invest in Universal. In return for his investment plaintiff received a subordinated secured note, in the face amount of $250,000 bearing interest at the rate of twelve (12%) percent and 17,500 shares of Universal's common stock. The obligation was guaranteed by the personal guarantees of Universal's principals, Juris Mednis and Leslie Wicks.

In mid March of 1990, Mr. Thornburg was concerned that Universal was not doing well. He contacted the law firm of Fraser Trebilcock Davis & Foster and instructed them to investigate the Universal transaction. Their investigation revealed that RLRI had not filed the Confidential Report of Offering pertaining to the Universal transaction with the State of Michigan, Department of Commerce, Corporation and Securities Bureau. The evidence shows that by March 19, 1990, plaintiff knew that the Confidential Report of Offering had not been filed.[3] IEG's attorneys drafted a letter to RLRI requesting rescission of the Universal transaction. However, IEG did not request that the transaction be rescinded until after Universal defaulted on the loan.

On March 29, 1990, Universal was required by the promissory note to make an interest payment to the plaintiff. Universal failed to make this payment and defaulted on the note.

On April 2, 1990, plaintiff's counsel sent a letter to Mr. Hughes demanding rescission of the plaintiff's Chronodynamics purchases and the Universal investment. Defendants re-

fused to rescind the transactions, and IEG filed a complaint on May 18, 1990. The original complaint sought recovery only on the Universal transaction. The complaint was subsequently amended to include the plaintiff's purchase of Chronodynamics.

On May 21, 1990, RLRI filed a Confidential Report of Offering regarding Universal's securities with Michigan's Department of Commerce, Corporation and Securities Bureau. The report was dated May 15, 1990, and contained the following information: (1) that Universal was the issuer; (2) that RLRI was the broker-dealer; (3) that RLRI was registered in Michigan; (4) that RLRI was not affiliated with the issuer; (5) a description of the securities; (6) the statutory provision pursuant to which exemption from registration was claimed; (7) that a commission of $25,000 was paid on the sale of the securities; and (8) that Investors Equity Group, plaintiff, was the sole Michigan purchaser of the securities.

## ANALYSIS

Michigans' Uniform Securities Act (the Act) provides that:

> It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act or (2) the security or transaction is exempted under section 402.

M.C.L. § 451.701; M.S.A. § 19.776(301).

The Act also provides an exemption from registration for certain securities which satisfy each of the following requirements:

> (C) A commission is not paid or given directly or indirectly for soliciting any prospective purchaser in this state, except to a broker-dealer registered pursuant to this act who is not affiliated with the issuer or its affiliates. Those payments shall be re-

---

3. The billing statement from Fraser Trebilcock Davis & Foster, P.C. states:
   03/15/90  IKS Review PPM for Universal Symetrics and telephone conference with Mr. Thornburg re: same.
   03/16/90  IKS Telephone calls re: securities law issues for Universal Symetrics investment.
   03/19/90  IKS Telephone conference with securities examiner and memorandum to Attorney Stocker re: status of investigation

03/26/90  IKS Conference with Attorney Stocker regarding strategies for Universal Symetrics investment.
03/27/90  IKS Research and draft letter to brokerage firm re: rescission repquest. (sic)
03/28/90  IKS Revisions to proposed letter to brokerage firm.
03/30/90  IKS Office conference with Roger Thornburg re: investment

flected on the books and records of the broker-dealer, and shall be fully disclosed in writing to each prospective purchaser. The broker-dealer or issuer shall file with the administrator on such forms as the administrator prescribes, a confidential report of offering within 30 days after initiation of the offering in this state and every 90 days thereafter until the final report of completion of the offering.

M.C.L. § 451.802(b)(9); M.S.A. § 19.-776(402)(b)(9)

M.C.L. § 451.810(a); M.S.A. § 19.-776(410)(a) provides that any person who offers or sells a security in violation of section 301 is liable to the person buying the security for "the consideration paid for the security ... together with interest at 6% per year from the date of payment, costs and reasonable attorneys' fees." *Id.*

It is undisputed that the defendants violated the Act by failing to file the Confidential Report of Offering within thirty days of the initial offering of the securities as required by the provisions cited above. Plaintiff contends that this violation entitles it to rescind the sale and the return of its investment, together with interest and attorneys' fees. In its prior motion for judgment on the pleadings and/or summary judgment plaintiff argued that the defendants should be strictly liable for their failure to comply with the Act. Plaintiff argued: "[I]f one proves that the seller has violated the securities statute, one is entitled to rescission without having to prove fraud.... The Defendants' violation of the statute, by failing to timely file the confidential memorandum with the Corporation and Securities Bureau, entitles the Plaintiff to an order of rescission." *Investors Equity Group, Inc. v. Rosenkrantz, Lyon & Ross, Inc.*, No. 5:90–CV–43, 1992 WL 501775 at *3, 1992 U.S.Dist. LEXIS 8062 at *9 (W.D.Mich. April 8, 1992).

In an Opinion dated April 8, 1992, Judge Hillman rejected the plaintiff's strict liability approach. "Michigan courts do not hold that violation of the Act justifies granting the Act's remedies under all *circumstances.*" *Id.* Judge Hillman specifically recognized two defenses which could prevent the plaintiff's recovery. He relied upon *Williams Delight*

*Corp. v. Harris*, 87 Mich.App. 202, 273 N.W.2d 911 (1978) and *Walton v. Semmler*, 6 Mich.App. 596, 149 N.W.2d 885 (1967) and found that the Act does not require rescission if the defendant unwittingly violated the Act and the purchaser participated in some way in the wrongdoing.

In the present case, defendants have alleged sufficient facts to support a jury verdict in their favor under the holdings of *Williams Delight* and *Walton.* They allege that Thornburg knew of the filing requirement because of his experience in investing in Michigan, that he knew of the violation of the Act but did not invoke the violation until he realized that his investment had turned sour. These allegations, if accepted by the jury, could support a verdict in favor of defendants on the issue of their liability for the failure to fully comply with the Act's requirements for claiming an exemption.

*Investors Equity*, 1992 WL 501775 at *4, 1992 U.S.Dist. LEXIS 8062 at *11–12.

Judge Hillman also found that the defendants' violation of the Act may have been de minimis. Judge Hillman recognized that the only reason the securities did not qualify for exemption was because of the defendants' failure to meet a technical filing requirement.

Thus, under the facts alleged by plaintiff, defendants did not need to file the Report Form for two to three weeks after plaintiff made its investment. Under these circumstances, it is difficult to understand plaintiff's argument that an order of rescission is necessary to serve the Act's purposes of permitting the Securities Bureau to investigate offerings before permitting the issuer to offer them for sale. Defendant alleges, and plaintiff has not denied, that before plaintiff made the purchase, plaintiff already had at its disposal all the information that was belatedly included in the Report Form. Thus, it appears that defendant complied with Section 402's requirement that the commission be disclosed to the buyer.

*Investors Equity*, 1992 WL 501775 at *4, 1992 U.S.Dist. LEXIS 8062, at *12–13.

Subsequent to Judge Hillman's Opinion, this case was transferred to me. Plaintiff argues that—notwithstanding Judge Hillman's April 8, 1992, Opinion—the Michigan security laws do not provide any defense to the plaintiff's claim for rescission. In essence, plaintiff is reasserting its strict liability position. This Court finds that Judge Hillman's pre-transfer ruling constitutes the law of the case and should not be disturbed without good reason. Accordingly, this Court will work within the framework of Judge Hillman's prior Opinion.

## In Pari Delicto

■ The equitable defense of *in pari delicto,* meaning "in equal fault," is based upon the belief that a plaintiff's recovery may be barred by his own wrongful conduct. Michigan courts have held that the *in pari delicto* defense is available in actions involving violation of the Michigan security laws. In *William's Delight Corp. v. Harris,* 87 Mich.App. 202, 273 N.W.2d 911 (1978), the court stated that even where the sale of securities is admittedly in violation of Michigan security laws a purchaser may be estopped from rescinding the transaction.

> In the above cases, the sale of securities were admittedly in violation of Michigan security laws. Nevertheless, the court estopped the purchaser from asserting the violation by focusing on such factors as his business acumen, the nature and degree of his involvement in the seller's management, his familiarity with securities regulations and/or the seller's failure to comply and his opportunity for independent legal advice. Thus, the common thread uniting these cases is that the purchaser urging the violation in some sense participated in the wrongdoing.

87 Mich.App. at 210, 273 N.W.2d at 915. The court in *Williams Delight* held that rescission will not be available "where the seller can establish [1] its own unwitting violation of the act and [2] the purchaser's culpable involvement or acquiescence in it...." 87 Mich.App. at 212, 273 N.W.2d at 916.

■ As to the first element of the *in pari delicto* defense, as set forth above, the defendants in this case argue that their viola-

tion of the Act was unintentional. The Confidential Report of Offering is a simple form which requires no filing fee and contains information which the defendants made readily available to the plaintiff. According to the defendants, they did not intend to purposefully deceive the plaintiff by failing to file the form.

This Court finds that the defendants' violation of the Act was indeed "unwitting." The record does not support a finding that the defendants intended to violate the Act by failing to file the Confidential Report of Offering in a timely manner. The Court believes that their oversight was inadvertent.

The second element of the *in pari delicto* defense requires the purchaser's culpable involvement or acquiescence. In this case the defendants contend that IEG, through its principal, Mr. Thornburg knew that the securities had not been registered. Yet, IEG waited until after Universal defaulted on its loan before attempting to rescind the transaction. According to the defendants, IEG's conduct in waiting until after its investment "had soured" before attempting to invoke the statute constitutes acquiescence. Therefore, defendants contend that IEG should be estopped from rescinding the transaction.

This Court finds that although Mr. Thornburg was not a sophisticated investor, he was not as naive as he sought to portray himself at trial. Mr. Thornburg was, at least, generally aware of the filing requirements associated with this type of transaction. He had participated in such filings regarding limited partnerships with which he has been involved.

After Mr. Thornburg learned that Universal was experiencing financial difficulty he instructed IEG's attorneys to investigate the matter. Sometime between March 16 and March 19, 1990, IEG's attorneys informed Mr. Thornburg that the Universal shares were neither registered nor exempt from registration. Despite this information, IEG waited until after March 29, 1990, when Universal defaulted on the loan to demand rescission.

IEG may have been "hedging its bet" by waiting until April 2, 1990, to make its rescission demand. By then it was certain that its investment "had soured." Although IEG's

conduct may be somewhat suspect, the Court does not believe that the element of culpable involvement has been satisfied. At the most IEG waited a matter of only two and a half to three weeks from the date it learned of the statutory violation before making its rescission demand. Considering the amount of the investment and the uncertain consequences of a failure to have filed the form, this delay is not unconscionable. Furthermore, a slightly earlier notice would have made no difference in the financial situation of Universal or the relative positions on the parties. If Universal defaulted on interest payments on April 2, 1990, it most certainly could not have rescinded on March 16 or 19, 1990. IEG was not involved with the issuers' management; it did not encourage the issuers to make any particular investment; it had no special "insider" knowledge; it was not responsible for advising the defendants on how to comply with Michigan's securities laws. Unlike the plaintiff in *Schrier v. B & B Oil Co.*, 311 Mich. 118, 18 N.W.2d 392 (1945), Mr. Thornburg was neither an officer or director of the issuer. IEG did not participate in the defendants' violation of the Act. Consequently, defendants are unable to defeat the plaintiff's claim based upon the *in pari delicto* defense.

### De Minimis

■ Defendants contend that the plaintiff is not entitled to rescission due to the *de minimis* nature of the violation. The purpose of the Michigan Uniform Securities Act is to protect the investing public:

> The act was designed to protect the public from fraud and deception in the issuance, sale, exchange, or disposition of securities within this state by requiring the registration of certain securities and transactions. Its purpose is to prevent stockholders and promoters from perpetrating frauds and impositions on unsuspecting investors in hazardous undertakings and to protect credulous and incompetent persons from their own inclinations to speculate in hazardous enterprises.

*People v. Mitchell*, 175 Mich.App. 83, 437 N.W.2d 304, 306 (1989) (citations omitted).

Defendants claim that registration would not have served the Act's purpose of protecting the investing public because the securities need not have been registered until after the plaintiff had made its investment. Further, all of the information contained in the Report had been provided to the plaintiff before it made its investment.

In his Opinion of April 8, 1992, Judge Hillman stated that if the Confidential Report of Offering did not need to be filed until after the plaintiff had made its investment "it is difficult to understand plaintiff's argument that an order of rescission is necessary to serve the Act's purposes of permitting the Securities Bureau to investigate offerings before permitting the issuer to offer them for sale." *Investors Equity*, 1992 WL 501775 at *4, 1992 U.S.Dist. LEXIS 8062, at *12–13.

M.C.L. § 451.802(b)(9); M.S.A. § 19.-776(402)(b)(9) provides that a Confidential Report of Offering must be filed "within 30 days after initiation of the offering" in the State of Michigan. Thus, the date on which the defendants initiated the offering in Michigan becomes important. If the offering was initiated within 30 days of IEG's purchase of the Universal securities on September 21, 1989, the Confidential Report of Offering did not need to be filed before the plaintiff made its investment, and the State of Michigan would not have had the opportunity to conduct a pre-offering investigation.

On direct examination Mr. Thornburg testified that his first conversation regarding Universal was a week, or perhaps two weeks, before his purchase of the investment on September 21, 1989.[4] This statement is supported by the plaintiff's First Amended Complaint and the deposition testimony of Mr. Thornburg which both indicate that the initial conversation relating to the Universal transaction took place in September of 1989.

If the initial offering occurred between September 7 and September 14, 1989 (one or

---

4. Mr. Thornburg testified on direct examination:
   Q: Mr. Thornburg when did you first hear of a company known as Universal Symetrics?
   A: Kamal Hughes called me sometime. I'm not sure I can give you the exact date but it would have been maybe a week or two before the investment. September of 1989 would be my best guess.

two weeks before the investment), the Confidential Report of Offering did not need to be filed until 30 days later—in October *after* IEG had made its investment. Plaintiff has argued that the defendants initiated the Universal offering in July of 1989, rather than September. Plaintiff contends that because the Confidential Placement Memorandum was printed on July 21, 1989, the offering had been initiated by that time. However, the Act requires that the Report be filed within 30 days after initiation of the offering *in this State.* The mere fact that an offering memorandum was printed does not mean that the defendants had initiated the offering in the State of Michigan.

Plaintiff also contends that Mr. Thornburg's initial conversations with the defendants regarding Universal actually took place in July. Consequently, the offering was initiated in July rather than September. Mr. Thornburg testified that his initial conversations regarding the Universal transaction occurred a week or two before September 21, 1989. In subsequent testimony he recalled that Mr. Hughes first solicited him regarding the Universal security in July. This Court finds Mr. Thornburg's earlier testimony more credible. Consequently, it finds that the initiation of the offering occurred in mid-September of 1989, and the Confidential Report of Offering did not need to be filed until after IEG made its investment.

The Court must now determine whether the filing requirements of M.C.L. § 451.-802(b)(9), M.S.A. § 19.776(402)(b)(9) are essential to the exemption. The parties have been unable to locate any Michigan case which addresses this issue.[5] This Court believes that *Kelly v. Oklahoma Land and Exploration 1980 Drilling Program, Ltd.,* No. 83–CV–2890–DR (E.D.Mich. July 6, 1984) is instructive. In that case, the defendants had failed to file their report of offering within the 30 days required by M.C.L. § 451.802(b)(9), M.S.A. § 19.776(402)(b)(9) and the plaintiff wanted to rescind the transaction. Plaintiff filed a motion for partial summary judgment claiming that the defendants had lost their exemption because of their failure to file the report on time. Plaintiff argued that he was entitled to rescission. The court denied the plaintiff's motion. In a decision from the Bench, Judge Robert De-Mascio stated:

[N]o Court has held to, what seems to be to this Court, an insignificant requirement after the defendant complies with all other requirements ... There is absolutely no prejudice to your client at all here. He didn't rely on it, could not have relied on it. This filing is not intended for him. I have yet to see an investor go up to Lansing to check to see if that filing was made. I just do not see summary judgment here at all ... and the motion is denied.

Transcript at p. 23, *Kelly* (No. 83–CV–2890–DR). The case was ultimately settled.

It is clear that at the time IEG made its investment the Universal offering was entitled to exemption from registration because the Confidential Report of Offering was not yet due. The obvious reason for the Confidential Report of Offering is for the Michigan Securities Bureau's administrative purposes. It seems to me that it would be an absurd result to rescind the entire transac-

5. Cases from other jurisdictions have addressed similar issues. In *McConnell v. Surak,* 774 F.2d 746 (7th Cir.1985), the purchaser of securities was entitled to rescind the transaction because the issuer had failed to file a report of sale with the Illinois Secretary of State within 30 days of the sale, as required for the exemption under Illinois law. However, at the time *McConnell* was decided Illinois law required strict compliance with the exemption provision. Michigan, on the other hand, permits equitable defenses. *See, Williams Delight, supra.* Furthermore, the Illinois legislature amended the law so that the failure to file no longer disqualifies the transaction from exemption. "[T]he unnecessarily harsh consequences and arbitrary operation of the report filing requirements have been repealed

to insure greater equity in the application of the Securities Law and to eliminate what was a classic trap for the unwary." 774 F.2d at 749 n. 3.

In *Birnholz v. 44 Wall Street Fund, Inc.,* 559 So.2d 1128 (Fla.1990) the court held that a mutual fund company complied with all of the state regulatory requirements intended to protect the public in the sale of securities. Consequently, its failure to timely pay a renewal fee, pursuant to a subsequently enacted amendment, did not void its exemption. "We find, in this limited instance, that the fund's technical violation should be excused under the equitable doctrine of substantial compliance. The fund has complied with all of the provisions intended to protect the public." *Id.* at 1132.

tion because of the tardy filing of an administrative document. The Confidential Report of Offering was designed to inform the State of the completion of an exempt offering.[6] The information contained on the Report had been provided to IEG by the defendants prior to the time IEG made its investment. Obviously, IEG could not have relied upon the Report when deciding whether or not to make its investment since the Report was not yet due.

In this case, IEG knew what it was doing when it made its investment. It also knew of the speculative nature of its investment. This Court finds that the defendants' failure to file the Confidential Report of Offering within the 30 days as required by statute was a *de minimis* violation. Therefore, the plaintiff is not entitled to rescind the transaction.

### CONCLUSION

For the reasons set forth above, plaintiff is denied recovery against the defendants. An Order consistent with this Opinion shall issue forthwith.

---

**6.** For example, investments could be sold over a lengthy period and the Confidential Report of Offering could be filed for all periods except the last. If the Report for the last period was not

filed, would even those transactions occurring before earlier filings be subject to rescission? I think not.