MORAN *v.* DETROIT BOARD OF ELECTION COMMISSIONERS.

1. MUNICIPAL CORPORATIONS—VOTING MACHINES—STATUTES.
    A city is granted the power to purchase and use voting machines meeting statutory standards and requirements (CL 1948, §§ 191.2, 191.6).

2. ELECTIONS — VOTING MACHINES — BALLOTS — ARRANGEMENT OF NAMES OF CANDIDATES.
    That names of candidates for nomination to any political office by a political party are to be placed upon the party *row* of such party on a voting machine is a different requirement than placement in a separate *column* on a ballot (CL 1948, §§ 177.-16, 191.6).

3. SAME—INADEQUACY OF MACHINES—USE OF PAPER BALLOTS.
    Paper ballots may be used when election commissioners are confronted with an election at which all of the names of candidates cannot be accommodated on the voting machines (CL 1948, § 191.6).

4. SAME—VOTING MACHINES—ROTATION OF NAMES.
    The rotating of names of candidates by precincts using voting machines is a sufficient rotation to comply with statutory requirements and obviates the presumed advantage of placement in the top row (CL 1948, § 165.3).

5. SAME—VOTING MACHINES—SUITABILITY FOR USE BY CERTAIN VOTERS.
    Whether or not voting machines tend to confuse the voter or are not suitable for use by the aged or infirm voters are matters for consideration by the legislature and not grounds for judicial interference with election officers.

REFERENCES FOR POINTS IN HEADNOTES
[1–5, 7] 18 Am Jur, Elections § 213.
[1–5, 7] Constitutionality of statutes providing for use of voting machines. 66 ALR 855.
[6] 3 Am Jur, Appeal and Error § 823.
[8] 43 Am Jur, Public Officers § 255.
[9] 14 Am Jur, Costs § 91.

6. APPEAL AND ERROR — INJUNCTION — PARTIES — SUFFICIENCY OF PLEADING.

Whether or not an alleged taxpayer and voter is a proper party in suit to enjoin purchase of voting machines by city election officials is not determined, where allegations in bill are insufficient upon which to base injunction against contemplated action.

7. INJUNCTION — VOTING MACHINES — IMPROPER MANIPULATION — MALFUNCTIONING — STATUTES.

Purchase and use of voting machines *held,* not subject to restraint by injunction, where allegations as to capacity for improper manipulation and malfunctioning are insufficient to show the machines fail to meet statutory and charter standards and requirements (CL 1948, §§ 191.2, 191.6).

8. OFFICERS — DISCRETION — COURTS — FRAUD — ABUSE OF DISCRETION.

The judgment of municipal officers in the execution of powers conferred on them by law or charter for a public purpose is not subject to control and correction by the courts in the absence of fraud or a clear abuse of discretion.

9. COSTS — PUBLIC QUESTION — INJUNCTION — VOTING MACHINES.

No costs are allowed in suit to enjoin purchase of certain voting machines by defendant city, a public question being involved.

Appeal from Wayne; Murphy (George B.), J. Submitted June 10, 1952. (Docket No. 57, Calendar No. 45,512.) Decided June 27, 1952.

Bill by Edward J. Moran against Thomas D. Leadbetter and others, individually and as Board of Election Commissioners of the City of Detroit, and others to restrain purchase of certain voting machines. Decree for defendants. Plaintiff appeals. Affirmed.

*Thompson & Moran,* for plaintiff.

*Paul T. Dwyer,* Acting Corporation Counsel, and *James R. Walsh,* Assistant Corporation Counsel, for defendants.

REID, J. Plaintiff's original and amended bill of complaint was filed for the purpose of enjoining officials of the city of Detroit from purchasing and from using certain automatic voting machines in public elections to be held in the city of Detroit. Plaintiff states in his bill of complaint that he is a resident taxpayer and voter in the city of Detroit. Defendants answered and moved to dismiss the bill. Without hearing on the merits, the court granted the motion to dismiss the bill, on the ground that the bill did not state a cause of action.

On or about May 22, 1951, the city of Detroit through defendant Hazen L. Funk, commissioner of purchases and supplies, received bids for furnishing 300 to 500 voting machines, pursuant to a request for bids authorized by the common council of the city of Detroit. The Engineering Society of Detroit was appointed by the common council of the city of Detroit to make a study of the voting machines upon which bids had been submitted; the said society reported among other things to the common council that the automatic voting machines manufactured by the Automatic Voting Machine Corporation of Jamestown, New York, intervening defendant, were so constructed that the officer's latch is depressed to unlock the voter's lever; this arrangement permits the officer's latch to be leaned against by a careless officer and thus held in such a position that multiple voting is possible; and further that under certain circumstances it is possible to examine the counters of the machine during the course of an election and to return the machine to a voting condition without this improper action having been exposed by malfunctioning of the machine, which reported facts plaintiff relies on as grounds for the injunction prayed for by him.

Plaintiff further claims that prior experience with the automatic voting machine in question revealed

that it was deficient in that it was inadequate to provide for the ballot used in some elections in the city of Detroit, particularly in the primary election held in 1950, and in the nomination for members in the State legislature where 21 candidates are nominated.

Plaintiff further claims that the construction and operation of the machine so confused voters that candidates appearing upon the top row received votes actually intended for candidates in the second row, because of nonrotation of names.

Plaintiff further claims that the horizontal arrangement of offices on the voting machine violates the requirements of CL 1948, §§ 177.20 and 191.6 (Stat Ann §§ 6.365 and 6.570).

Plaintiff further claims that notwithstanding the defects reported by the Engineering Society, and other defects otherwise found out by experience, the common council recommended the purchase of the said automatic voting machines and intended to authorize the purchase of 500 of the machines for approximately $600,000 as an initial installation; and that the total cost including other future installations would be $4,500,000.

No dishonesty or fraud is claimed regarding the actions or contemplated actions of the defendants. The authority and power of the officials to purchase and use voting machines is not subject to doubt. By the statute of this State, CL 1948, §§ 191.2 and 191.6 (Stat Ann §§ 6.566 and 6.570), the city is granted the power to purchase and use voting machines, and standards and requirements are set forth.

The statute prescribes (CL 1948, § 191.6 [Stat Ann § 6.570]) that the names shall be "in the same order" on the machines that the names are required to be upon printed ballots.

It is to be noted that the statute, CL 1948, § 177.15 (Stat Ann 1951 Cum Supp § 6.359), as to paper ballots, prescribes, "The names of all candidates

of each political party shall be placed in a separate *column* on said ballot," whereas the statute, CL 1948, § 191.6 (Stat Ann § 6.570), apparently contemplating that machines may be used, prescribes, "The name of each candidate for nomination to any office by a political party shall be placed upon the party *row* of such party." We italicize and emphasize the 2 words "column" and "row," to indicate that we differentiate between column and row, whereas plaintiff seems to argue that the 2 words mean the same thing, as to being vertical or horizontal.

Respecting the defect that all the names of candidates at some primary elections cannot be placed on the voting machines, it is to be noted that the statute, CL 1948, § 191.6 (Stat Ann § 6.570), further provides:

"Where voting machines are purchased or are used the election commissioners of the county, city or village or township shall not be required to print and furnish paper ballots for election districts using voting machines, *except for* any question or *matter that cannot be provided for by the voting machines."* (Italics supplied.)

No question is raised in this case but that the election commissioners could provide paper ballots when confronted with a primary or general election, in which it shall be found that the voting machine cannot accommodate all the names of candidates.

In connection with plaintiff's contention respecting nonrotation of names and that the top candidate received votes actually intended for second row candidates, it is to be noted that the statute, CL 1948, § 165.3 (Stat Ann § 6.248), provides for rotating names of candidates by precincts, *i.e.,* the machine in one precinct has the order of names of candidates changed from the order in another precinct.

In *Groesbeck* v. *Board of State Canvassers,* 251 Mich 286, we say (per syllabus 17):

"Neglect of election officials to alternate names of candidates on ballots, as required by election law (part 3, chap 4, § 12), does not invalidate ballots."

Also (per syllabus 18):

"Use of voting machines at primary election, as authorized by election law (part 3, chap 11, § 3), and failure to alternate names of candidates thereon, did not invalidate the vote cast thereon."

Where there are several candidates, the name in the top row, or first on the list, has presumably some advantage to such candidate. We consider the statutory provision proper which provides for rotation of names on the machines by precincts, and that said statutory provision disposes of plaintiff's objection as to nonrotation of names.

Plaintiff further claims that the use of the machine tended to confusion of the voters, and that it is inconvenient for use by aged or infirm voters because of the size and shape of the lever, which 2 questions, we consider, are legislative and discretionary, and not so set forth in the bill of complaint as to indicate grounds for judicial interference, and do not merit detailed discussion.

The allegations of the bill of complaint are insufficient to show that the actions or contemplated actions of the defendants are *ultra vires,* contrary to the Constitution, the statute or the city's charter, or fraudulent, malicious or corrupt, and so it is unnecessary to rule on plaintiff's request that he be declared a proper party to bring this suit.

In view of the foregoing, we find the purchase and use of the machines in question not violative of the statutes or charter and there is no sufficient allegation in the bill to show that the machines are not in compliance with statutory requirements.

"In accordance with the general rules governing judicial control over the acts of public officers, the judgment of municipal officers in the execution of powers conferred on them by law or charter is not subject to control and correction by the courts in the absence of fraud or a clear abuse of discretion." 37 Am Jur, p 886.

"Where a municipality has the power to engage in an activity for a public purpose, the courts will not interfere with the discretionary acts of its municipal officials. * * * [Citing cases.] In *Veldman* v. *City of Grand Rapids,* 275 Mich 100, 113, we said:

"'In order to warrant the interposition of a court of equity in municipal affairs, there must be a malicious intent, capricious action or corrupt conduct, something which shows the action of the body whose acts are complained of did not arise from an exercise of judgment and discretion vested by law in them.'" *Wolgamood* v. *Village of Constantine,* 302 Mich 384, 395.

We affirm the decree appealed from dismissing the bill of complaint. No costs, a public question being involved.

DETHMERS, BUTZEL, CARR, BUSHNELL, SHARPE, and BOYLES, JJ., concurred.

NORTH, C. J., did not sit.