## DETTORE v BRIGHTON TOWNSHIP

1. MANDAMUS—CONDITIONS FOR ISSUANCE—LEGAL RIGHT—LEGAL DUTY.

   Mandamus will issue only if the plaintiff proves he has a clear legal right to performance of the specific duty sought to be compelled and that the defendant has a clear legal duty to perform such act.

2. MANDAMUS—APPEAL AND ERROR—JUDGE'S DISCRETION.

   The Court of Appeals will not interfere with a trial court's refusal to issue a writ of mandamus unless it is evident that such refusal constitutes a clear abuse of discretion.

3. LICENSES—STATUTES—GARBAGE DISPOSAL—WASTE DISPOSAL—ZONING—LOCAL REGULATIONS.

   A statute which governs state licensing for the disposal of garbage and waste provides that before a state license becomes operative, the licensee must (1) obtain a license to operate the disposal area from the local governing body if required, (2) secure proper zoning permits if necessary, and (3) comply with any applicable local regulations (MCLA 325.292).

4. ZONING—WASTE DISPOSAL—LICENSES—TOWNSHIP BOARDS—DISCRETION.

   A township board has the power to deny, within prescribed limits, a permit to operate a waste disposal area within its borders and the board's denial of a zoning variance to allow the

REFERENCES FOR POINTS IN HEADNOTES

[1] 52 Am Jur 2d, Mandamus §§ 72, 73.

[2] 52 Am Jur 2d, Mandamus § 494.

[3, 4] 51 Am Jur 2d, Licenses and Permits § 136.

Regulation and licensing or private garbage or rubbish removal services. 83 ALR2d 799.

Validity of statutory or municipal regulations as to garbage. 125 ALR 1305.

[4] 58 Am Jur, Zoning § 127.

Zoning: Creation by statute or ordinance of restricted residence districts from which business buildings or multiple residences are excluded. 117 ALR 1117.

operation of such an area where the applicant had already acquired a license from the state, but where the land involved was zoned residential and was being used for mining, a nonconforming use, and where the board provided a specific list of detailed reasons for its denial of the zoning request which were well within the bounds of the board's discretion, was not improper.

Appeal from Livingston, Paul R. Mahinske, J. Submitted Division 2 November 15, 1974, at Lansing. (Docket No. 20031.) Decided February 13, 1975.

Complaint by Louis J. Dettore and U.S. Building and Development Company against the Brighton Township Board of Appeals and its individual members for mandamus to compel the issuance of a permit. Mandamus denied. Plaintiffs appeal by leave granted. Affirmed.

*Lavan & Hegarty,* for plaintiffs.

*Charles S. Toy,* for defendants.

Before: BRONSON, P. J., and D. E. HOLBROOK and V. J. BRENNAN, JJ.

BRONSON, P. J. Plaintiff-appellant Louis J. Dettore[1] owns a 70-acre parcel of land in Brighton Township, Livingston County. This parcel has long been used for mining purposes, a nonconforming use in an area zoned R-1 residential. Dettore sought to create a sanitary landfill, solid waste disposal operation on 20 acres of the parcel. The state, by virtue of a license obtained from the Department of Natural Resources, has given him permission to do so. However, the local governing

---

[1] U. S. Building & Development Co., of which Dettore is president, is also a plaintiff-appellant; for simplicity, we refer hereinafter to Dettore when speaking of plaintiffs-appellants.

body—here the Brighton Township Board of Appeals—refused to grant Dettore the zoning variance he requested to expand the scope of his nonconforming use. In order to resolve this conflict, Dettore petitioned the Livingston Circuit Court for a writ of mandamus to compel the Brighton Township Board of Appeals "to issue the permit requested by the plaintiffs". That petition was denied by the circuit judge on April 1, 1974 on the ground that:

"the appeal board of the Township of Brighton is nevertheless still vested with the discretionary power to prohibit the plaintiffs from exercising the permission granted by the State Health Commissioner * * * ."

Dettore appeals the denial of his application for a writ of mandamus by leave granted on June 26, 1974.

We necessarily face a very narrow question: Is Dettore entitled to the writ of mandamus as prayed for under the circumstances here presented?

Mandamus is the traditional remedy used to compel the performance of mandatory legal duties by public officials. See 4 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 181. The following quotation from *Kortering v Muskegon,* 41 Mich App 153, 154; 199 NW2d 660, 661 (1972), appropriately summarizes both the requirements for obtaining the writ and the standard to be applied by appellate courts in reviewing lower court decisions involving requests for mandamus:

"A writ of mandamus will issue only if plaintiffs prove they have a 'clear legal right to performance of the specific duty sought to be compelled' and that defendant has a 'clear legal duty to perform such act'.

(Citations omitted.) This Court will not interfere with the trial court's refusal to issue a writ of mandamus unless it is evident that such refusal constitutes a clear abuse of its discretion. (Citations omitted.)"

It is evident, then, that mandamus is both a discretionary and an extraordinary remedy. It is not to be entertained lightly and may issue only under limited circumstances. Accordingly, we must assess the factual matrix of the present case to determine whether the trial judge abused his discretion in denying the writ of mandamus as prayed for. If either Dettore does not have a "clear legal right" to the relief requested or the township board does not have a "clear legal duty" to perform the act requested, then the writ was properly denied.

Dettore argues that his right to have the township board issue the permit is clearly established by the issuance on June 4, 1973—and renewal on January 8, 1974—of a state license to conduct a solid waste disposal area on his land. This license was issued by the Department of Natural Resources, pursuant to the garbage and refuse disposal act of 1965, MCLA 325.291, *et seq.;* MSA 14.435(1), *et seq.* The claim is that in enacting this statute the Legislature sought to "occupy the field" of solid waste disposal, thereby prohibiting local governments from preventing what the state has permitted. *Waterford Processing and Reclaiming Co v Township of Waterford,* 25 Mich App 507; 181 NW2d 675 (1970), is cited in support of this preemption argument.

There appears in *Waterford, supra,* language which on its face provides support for the position advanced by Dettore. That support is a passage containing very general language which, taken for all it is worth, does indicate that "local regulations

may not *exclude* what the state has permitted".
*Waterford, supra,* at 511.

*Waterford,* however, paints with a very broad
brush over facts dissimilar from those at bar. In
*Waterford,* the land sought to be transformed into
a sanitary landfill was located in an area already
zoned to permit such a use, in accordance with a
township ordinance. Dettore's parcel, on the other
hand, is located in a residential area and is sur-
rounded by homeowners, many of whom do not
want the present use to be expanded in the man-
ner requested by Dettore.[2]

A second important difference between *Water-
ford* and the instant case is that in *Waterford* the
planning commission denied the permit solely be-
cause it "believed there was the possibility of
pollution of nearby Maceday Lake". *Waterford,
supra,* at 510. That reason was obviously untena-
ble, given that the State Health Commissioner had
granted the state license only after determining
that " 'unlawful pollution will not be created and
injury to ground and surface waters will be
avoided,' through careful control of [Waterford]
Processing's operation." *Waterford, supra,* at 509.

No such conflict exists in the present case. The
state license was apparently issued without expla-
natory comment, apart from the insertion of cer-
tain conditions with which Dettore must comply.[3]

---

[2] 256 residents living in the proposed landfill area petitioned the
Board of Zoning Appeals to deny the permit.

[3] 1. Installation of the five-foot clay liner must precede the filling
operation by five acres.

2. Rather than immediately recycling water which may be con-
taminated onto the landfill, it should be impounded in an impervious
lagoon for testing prior to deciding its disposition.

3. Monitor wells must be installed and tested prior to receiving
any waste.

4. Installation of the liner and underdrain system must be super-
vised and certified by the project engineer.

On the other hand, the Brighton Township Board of Appeals provided an itemized list of 11 quite detailed reasons for its denial of the zoning request.[4]

*Waterford,* then, is factually distinguishable from the instant case and does not stand for the proposition advanced by Dettore that in enacting the garbage and refuse disposal act the Legislature intended to prevent local governments from ever prohibiting the establishment of solid waste disposal areas once permission from the state has been obtained.

One section of the statute, quoted in *Waterford* itself, makes the intent of the Legislature quite plain. MCLA 325.292; MSA 14.435(2) provides as follows:

---

[4] 1. Applicant's location is one of the highest and most scenic in Livingston County and potential recharge area for surrounding water supply. Landfill would make the land unusable for buildings.

2. Master plan and present zoning indicates clearly highest and best use of land is R-1 residential.

3. Township residents would not benefit with proposed landfill, having adequate sanitary landfill at their disposal.

4. Existing gravel trucks produce heavy traffic with addition of refuse trucks, volume would be increased, creating potential safety hazard and excessive road maintenance and noise pollution. Landfill contracting basis, refuse could come from any area inside or outside of county, thereby using all township roads not constructed to handle trucks or additional traffic.

5. No time limit set for existence of landfill (5-10-15?) years.

6. Presently non-conforming gravel operation with practically unlimited extraction of sand and gravel.

7. Consideration of 256 signatures of residents living in proposed landfill area petitioning this board not to allow landfill.

8. Devaluation of surrounding property during projected time or life of landfill.

9. Conflict with Brighton Township Natural Resources Ordinance No. 20, § 6-2, in that putrescible material would be used at landfill.

10. This board takes into consideration with each appeal the opinions of property owners within 300 feet as required by state law. The property owners have requested the application be denied.

11. Proposed landfill would impair the public health, safety, comfort and welfare of the inhabitants of the Township of Brighton. Proof of hardship has not been shown.

658        58 MICH APP 652        [Feb

"No person shall dispose of any refuse at any place except a disposal area licensed as provided in this act. *Nothing in this act nor any act of the commissioner's shall usurp the legal right of a local governing body from developing and enforcing local ordinances, codes, or rules and regulations on solid waste disposal equal to or more stringent than the provisions of this act, nor will this act relieve the applicant for license to operate a disposal area from obtaining a license from a local governing body when required or relieve the person owning or operating a disposal area from responsibility for securing proper zoning permits or complying with all applicable local ordinances, codes, or rules and regulations not in conflict with this act.*" (Emphasis supplied.)

This section makes it clear that, far from preempting local government action in this area, the Legislature expressly recognized the legitimate interest local governments have in maintaining a substantial degree of control over land use within their jurisdictions. In order to protect this interest, the Legislature has provided, in effect, that before a state license becomes operative, the licensee must (1) obtain a license to operate the disposal area from the local governing body if required, (2) secure proper zoning permits if necessary, and (3) comply with any applicable local regulations. This statutory scheme cannot fairly be said to prohibit local governments from excluding what the state has permitted. Quite the contrary, it is made quite explicit that the statute "mandate[s] compliance with local ordinances". *Township of Haring v City of Cadillac,* 35 Mich App 260, 263; 192 NW2d 384, 385 (1971).

The result in *Waterford* can quite easily be reconciled with this view of the statute. In *Waterford,* the applicant had met zoning requirements and had complied in every respect with all applicable local regulations. Its request for a permit was denied by the local officials for a reason which was

both unsupported by the facts and "in conflict with this act". MCLA 325.292; MSA 14.435(2). *Waterford,* then, stands for the proposition that issuance of a state license pursuant to the garbage and refuse act prohibits the locality from denying a permit for reasons or under circumstances inconsistent with the express provisions of the act itself.

In the present case, Dettore has not secured the zoning variance he needs to establish a solid waste, sanitary landfill operation on his parcel. His request was denied for reasons which appear to us well within the bounds of the township board's discretion. The denial of the zoning variance is not in conflict with the statute, but rather an exercise of the authority therein expressly reserved to the local governing body.

Dettore has failed to show a "clear legal right" to the relief sought below. The statute he invokes in his favor instead makes his right to operate a sanitary landfill contingent on securing the approval of the township board. That same statute, as we have seen, makes it clear that the defendant-appellee Brighton Township Board of Appeals does not have a "clear legal duty" to issue the requested permit. On the contrary, the act expressly grants to the township board the power to deny the permit, within prescribed limits which were respected here.

Accordingly, the trial judge did not abuse his discretion in declaring that Dettore failed to demonstrate that a writ of mandamus could properly be granted in this case. We affirm the trial court on the issue presented in this appeal, and do not thereby presume to pass on any of the other questions still to be litigated when the parties return to the circuit court.

Affirmed. No costs, a public question being involved.