BANNAN v CITY OF SAGINAW

GIFFIN v CITY OF SAGINAW

KAUFMAN v CITY OF SAGINAW

HALE v CITY OF SAGINAW

Docket Nos. 57322-57325. Submitted July 15, 1982, at Lansing.Decided October 7, 1982. Leave to appeal applied for.

James H. Bannan, Gerald W. Giffin, George J. Kaufman, and Raymond J. Hale are all former fire fighters for the City of Saginaw who were retired. Bannan and Hale were given duty disability pensions. Giffin was given a nonduty disability pension. Kaufman was given a regular retirement pension. Each was also paid workers' disability compensation benefits, which the city offset against the pension benefits pursuant to the provisions of the ordinance which created pension benefits. All four men have passed the age of 55 years. The city continued to offset the workers' disability compensation benefits against the pension benefits after each man reached 55 years of age. Bannan, Kaufman, and Hale brought separate actions in Saginaw Circuit Court seeking judgments that each was entitled to his full pension benefits without any offset for the workers' disability compensation benefits he was also receiving. Giffin, in a separate action, sought mandamus compelling the retirement board to change his nonduty disability pension to a duty disability pension. The actions were consolidated. The court, Joseph R. McDonald, J., determined that the workers' disability

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Statutes § 254.
[2] 73 Am Jur 2d, Statutes §§ 214-216.
[3] 73 Am Jur 2d, Statutes § 194 *et seq.*
[4] 73 Am Jur 2d, Statutes § 250.
[5] 60 Am Jur 2d, Pensions and Retirement Funds § 4.
[6, 11] 81 Am Jur 2d, Workmen's Compensation § 180.
[7] 52 Am Jur 2d, Mandamus § 5.
[8] 52 Am Jur 2d, Mandamus § 80.
[9] 2 Am Jur 2d, Administrative Law §§ 650-652.
[10] 81 Am Jur 2d, Workmen's Compensation §§ 6, 229.
 82 Am Jur 2d, Workmen's Compensation § 240.

compensation offset language was not applicable to duty disability or regular retirement pension payments paid after the 55th birthday of the disabled employee. The court further determined that the retirement board abused its discretion when it gave Giffin a nonduty disability pension rather than a duty disability pension. The city was ordered to repay with interest all sums deducted from the pensions as a workers' compensation offset after each plaintiff had become 55 years of age. The city, further, was enjoined from deducting future workers' compensation benefits from the plaintiffs' pension benefits. The city appeals. *Held:*

1. The duty disability pension provision of the ordinance evidences a clear intent that the workers' compensation offset provision shall apply to a duty disability pension only until the employee reaches the normal retirement age of 55. The specific legislative intent evidenced in the duty disability pension provision is properly given effect even though the offset provision evidences a contrary general intent.

2. The "like benefits" provision in the Worker's Disability Compensation Act is not applicable since these pension benefits were created by ordinance rather than by charter, the ordinance does not require an election of benefits, and the disability pension is being paid in lieu of regular retirement pension benefits of a like amount. The pension benefits are therefore not "like benefits".

3. The trial court erred in ordering the retirement board to change Giffin's pension from a nonduty disability pension to a duty disability pension. The retirement board, in granting the pension, was not bound by the determination on the workers' compensation claim that there was a work related disability, since the standard for entitlement to a duty disability pension differs from the standard for a workers' disability compensation claim. Since the board's action was not arbitrary and capricious, mandamus was not appropriate.

Affirmed in part, reversed in part.

R. B. MARTIN, J., concurred. He, however, would not reach the question of whether the pension benefits were not "like benefits" to workers' disability benefits, since it is clear that the "like benefits" provision in the Worker's Disability Compensation Act is not applicable because that provision applies only to pension benefits created by charter and these pension benefits were created by ordinance.

OPINION OF THE COURT

1. STATUTES — JUDICIAL CONSTRUCTION.

A statute is enforced as written where it is unambiguous on its face; where an ambiguity exists, a statute is to be read in its entirety and, if possible, all sections of the statute are to be harmonized to create a consistent whole.

2. STATUTES — JUDICIAL CONSTRUCTION.

Statutes are construed so as to give effect to an expression of specific legislative intent where such expression is in apparent conflict with an expression of general legislative intent.

3. STATUTES — JUDICIAL CONSTRUCTION.

It is presumed, for the purpose of construing a statute, that all the language is to have meaning and no word or phrase of the statute should be treated as surplusage or rendered nugatory if at all possible.

4. STATUTES — JUDICIAL CONSTRUCTION.

Statutory provisions are to be read as a whole when construing the intent and effect of a statute.

5. STATUTES — JUDICIAL CONSTRUCTION — PENSION LAWS — REMEDIAL STATUTES.

Pension laws, being remedial in nature, should be liberally construed in favor of the persons intended to be benefited.

6. WORKERS' COMPENSATION — POLICEMEN AND FIREMEN PENSIONS — LIKE BENEFITS.

Disability pension benefits of a policeman or fireman are not "like benefits" within the "like benefits" provision of the Worker's Disability Compensation Act where the pension benefits are created by ordinance rather than charter, the ordinance does not require an election of benefits, and the disability pension benefits are being paid in lieu of a regular retirement pension benefit of a like amount (MCL 418.161; MSA 17.237[161]).

7. MANDAMUS — REMEDIES.

Mandamus is an extraordinary remedy which may issue only under limited circumstances.

8. MANDAMUS — REMEDIES — LEGAL RIGHT — LEGAL DUTY — MINISTERIAL ACTS.

Mandamus will issue only if the plaintiff proves he has a clear legal right to performance of the specific duty sought to be compelled and that the defendant has a clear legal duty to perform such act; ordinarily, the act requested to be enforced

must be ministerial, although the execution of the act may require the exercise of discretion.

9. Administrative Law — Appeal — Courts.

An administrative decision involving the exercise of discretion is subject to reversal by the courts only where the evidence establishes that the agency has abused its discretion by arbitrary action.

10. Workers' Compensation — Pensions — Proximate Cause — Causal Nexus.

A city pension board is not bound to apply the decision made with respect to a workers' disability compensation claim that a work related disability existed in its determination of whether the employee is entitled to a duty disability pension rather than a nonduty disability pension where the standard in the ordinance creating the pension is one of proximate cause rather than the causal nexus standard used in determining the workers' disability compensation claim.

Concurrence by R. B. Martin, J.

11. Workers' Compensation — Policemen and Firemen Pensions — Like Benefits.

*It is unnecessary to determine whether a policemen and firemen duty disability pension and workers' compensation benefits are "like benefits" within the provisions of the Worker's Disability Compensation Act where the pension is created by ordinance, since the "like benefits" provision of the act clearly applies only to pensions created by a charter provision (MCL 418.161; MSA 17.236[161]).*

*van Benschoten, Hurlburt & van Benschoten, P.C. (by Lawrence A. Hurlburt),* for plaintiffs.

*Braun, Kendrick, Finkbeiner, Schafer & Murphy (by Bruce L. Dalrymple),* for defendant.

Before: Allen, P.J., and Cynar and R. B. Martin,* JJ.

Per Curiam. Defendant, City of Saginaw, appeals as of right the trial court's four judgments

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

entered April 7, 1981, ordering the city to reimburse all four plaintiffs, with interest, the sums the city deducted from their disability retirement pensions. The judgments further enjoined defendant from deducting the amount of each plaintiff's future workers' compensation benefits from their pension benefits. The principal issue on appeal is the applicability of § 129 of the City of Saginaw's Ordinance D, which mandates the offset of workers' compensation benefits from all retirement benefits.

Plaintiffs are former City of Saginaw fire fighters who retired due to disabilities. Plaintiff Bannan was a Saginaw fire fighter for 24 years until February 28, 1967. The Bureau of Workers' Disability Compensation awarded Bannan weekly benefits of $69, or $3,588 annually, from that date. When Bannan became 55 years old, the city began paying him a duty disability pension pursuant to defendant's Ordinance D. Bannan was entitled to an annual duty disability pension of $3,479. However, pursuant to an offset provision in Ordinance D, defendant withheld and continues to withhold all of Bannan's pension benefits.

Plaintiff Giffin stopped working as a fire fighter on October 25, 1973, after approximately 24 years. On October 29, 1973, defendant voluntarily commenced paying Giffin workers' compensation benefits pursuant to the Worker's Disability Compensation Act of 1969 (WDCA); MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.,* in the amount of $98 per week or $5,096 annually. On November 1, 1973, Giffin retired. He was then entitled to an annual disability pension of $6,041.62. On October 31, 1974, Giffin turned 55. The defendant did deduct and continues to deduct Giffin's $5,096 workers' compensation benefits from his pension benefits.

Prior to that date, Giffin twice filed for a duty disability retirement. Instead, defendant's Board of Trustees of the Saginaw Policemen and Firemen Retirement System (board) found Giffin eligible for a nonduty disability pension on November 1, 1973, based upon its medical director's report which indicated Giffin suffered from several chronic illnesses but did not indicate the illnesses were work related. On November 26, 1974, Giffin asked the board to reconsider his application for duty disability benefits. On December 11, 1974, defendant sent Giffin a letter noticing a meeting of the board on December 17, 1974. At that meeting, the board noted Giffin's request and said:

"The board reviewed the history of various reports that were considered at the time Mr. Giffin originally applied for pension benefits. It was their considered opinion that based upon the evidence at that time, that the decision to grant Mr. Giffin non-duty disability benefits was correct. It was moved by Mr. Potthoff, supported by Mr. Muellerweiss, and adopted unanimously, that the communication from Gerald W. Giffin be received and filed."

Plaintiff Raymond Hale also discontinued working for defendant after almost 25 years on March 8, 1974. The following day, defendant voluntarily commenced paying Hale workers' disability benefits pursuant to the WDCA in the amount of $106 per week or $5,512 annually. On September 14, 1974, defendant's board granted Hale's application for a duty disability pension in the amount of $8,035.30 annually. Defendant's board deducted and continues to deduct $5,512 from Hale's duty disability pension annually.

Plaintiff Kaufman discontinued working as a Saginaw fire fighter on September 20, 1973, after

35 years of service. On November 21, 1974, the city voluntarily commenced paying Kaufman workers' compensation in the amount of $104 weekly or $5,408 annually. On June 6, 1973, Kaufman applied for a duty disability pension but defendant's board denied the same. Instead, Kaufman became eligible on his last day of work to a regular retirement pension of $10,408.84. Kaufman turned 55 years old in 1971. The defendant's board deducted and continues to deduct the $5,408 annual workers' compensation benefits from Kaufman's pension benefits.

The plaintiffs filed their suits against the city on various dates in 1978, seeking reimbursement of the amounts deducted from their pensions and a court order enjoining the defendant from further deducting the amounts of their workers' compensation benefits from their disability pensions. Moreover, plaintiffs Giffin and Kaufman each sought a writ of mandamus ordering the defendant's board to find him eligible for a duty disability pension as opposed to a nonduty disability pension or a regular pension.

Defendant's Ordinance D, Saginaw Administrative Code, ch 5, which contains the provisions governing the city's Policemen and Firemen Retirement System, requires the offset of workers' compensation benefits from all retirement benefits:

"Any workmen's compensation which may be paid or payable to a member, retirant or beneficiary on account of his city employment shall be offset against any pensions payable to such member, retirant or beneficiary. In case the present value of the workmen's compensation is less than the pension reserves for the pensions payable under this ordinance, the present value of such workmen's compensation shall be deducted from such pension reserves and such pensions as may be provided by the pension reserves so reduced

shall be payable under the provisions of this article."
§ 129.

Section 102.1(h) of that ordinance defines retirant as, "any member who retires with a pension payable by the retirement system". Section 102.1(u) also defines voluntary retirement age:

" 'Voluntary retirement age' means age 55 years for the firemen and age 52 years for the policemen: Provided, that in the case of an original member, voluntary retirement age means age 55 years for firemen and age 52 years for policemen or the age at which he acquires 25 years of credited service, whichever occurs first."

All Saginaw fire fighters *must* contribute to the pension/retirement system:

"Section 131. Members Deposit Fund.
"131.1 The members deposit fund is hereby created. It shall be the fund in which shall be accumulated, at regular interest, the contributions made by members to the retirement system, and from which shall be made refunds and transfers of accumulated contributions, as provided in this article.
"131.2 The contributions of a member to the retirement system to February 1, 1965, shall be 5 percent of his compensation. From and after January 31, 1965, to November 1, 1968, the contributions of a member shall be 6 percent of his compensation. From and after October 31, 1968, the contributions of a fireman member shall be 7 percent of his compensation."

Saginaw fire fighters do not contribute to the federal social security program. Instead, they contribute to the city's mandatory pension program. The city also contributes to the retirement fund annually based on a fluctuating annual actuarial evaluation of the system's means of support.

Sections 121-122 of Ordinance D provide for

nonduty disability pensions or retirements. Such disabilities are not work related. Section 122 provides:

"Section 122. Non-duty Disability Pension.
"122.1 A member who retires on account of disability, as provided in Section 121 hereof, shall receive a disability pension computed according to subsections 118.1 and 118.3. If the said member retires prior to his attainment of age 55 years his credited service shall be increased, for the exclusive purpose only of computing his disability pension, by the number of years, and fraction of a year, not to exceed 10 years, in the period from the date of his disability retirement to the date he would attain age 55 years. *His said disability pension shall be subject to Sections 128 and 129.* Upon his retirement he shall have the right to elect, in lieu of a straight life disability pension, to receive his disability pension under an option provided for in Section 120." (Emphasis added.)

Sections 123-124 of Ordinance D provide for duty disability pensions. Such disabilities are work related. Section 123 provides in part:

"If the medical committee certifies to the board, by majority opinion, that such member is physically or mentally totally incapacitated for duty as a policeman or fireman in the employ of the city, and the board finds the *disability to have occurred as the natural and proximate result of causes arising out of and in the course of employment with the city,* such member shall be retired by the board upon written application filed with the board by said member or his department head. Upon his retirement he shall be entitled to a pension provided in Section 124." (Emphasis added.)

Section 124 provides in part:

"Section 124. Duty Disability Pension.
"124.1 A member, who retires at or after his attain-

ment of age 55 years on account of disability, as provided in Section 123, shall receive a disability pension computed according to Section 118. Upon his retirement he shall have the right to elect, in lieu of his straight life disability pension, to receive his disability pension under an option provided for in Section 120.

"124.2 A member who retires prior to his attainment of age 55 years on account of disability, as provided in Section 123, shall receive a disability pension computed according to subsections 118.1 and 118.3. For the exclusive purpose only of computing his disability pension his credited service shall be increased by the number of years, and fraction of a year, in the period from the date of his disability retirement to the date he would attain age 55 years. Upon his attainment of age 55 years his disability pension shall be recomputed using a final average salary determined according to the salaries at the time he attains age 55 years for the ranks used in computing his final average salary at the time of his disability retirement. In no event shall such recomputed disability pension be less than the disability pension he received prior to his attaining age 55 years. Upon his retirement he shall have the right to elect, in lieu of a straight life disability pension, to receive his disability pension under an option provided for in Section 120. *To his attainment of age 55 years his disability pension shall be subject to Sections 128 and 129.*"

Similarly, §§ 127.1(b)-127.1(e) provide that pensions payable to a widow, children, or dependents of a member of the retirement system who dies in the line of duty are subject to the § 129 offset.

The trial court issued two opinions on March 18, 1981. The opinion in the Hale, Bannan, and Kaufman actions relied on the trial court's earlier opinion in *Zittel v City of Saginaw,* a 1973 decision. In *Zittel,* the plaintiff was a retired Saginaw fire fighter to whom defendant awarded a duty disability pension before he reached retirement age, 55 years old, pursuant to § 124.2. Defendant paid Zittel voluntary workers' compensation bene-

fits which the defendant's board deducted from Zittel's pension. The trial court found that, under the above-emphasized language of § 124.2, such a deduction from a duty disability pension was applicable only while the recipient was under 55 years of age.

"It is the ruling of this court that defendant City of Saginaw was entitled to set off the payments plaintiff received under workmen's compensation against his duty-disability pension benefits up to the time that plaintiff reached the age of 55. After plaintiff reached the age of 55 he was entitled under § 124.2 of the Saginaw Administrative Code to full pension benefits irrespective of any workmen's compensation benefits he might also receive. The last sentence of § 124.2, *supra,* clearly implies that the sections providing for periodic medical re-evaluation and workmen's compensation offset shall be applicable only until a retirant attains 55 years of age and inapplicable thereafter. This provision is expressed in plain language, and would seem logical in view of § 124.1 which permits a member to retire as a result of a duty related disability after attaining age 55 without the offsetting provision of § 129.

\* \* \*

"There, § 129 provides generally that workmen's compensation benefits payable to a retirant shall be offset against pension benefits similarly payable. Nevertheless, § 124.2 relating to duty-disability retirants specifically indicates that the general offset provision is applicable only until an individual so retiring attains the age 55. The reasonable construction of the ordinance is *that the specific provision governs applicability of the general provision.* Therefore, the general offset of workmen's compensation benefits has no applicability to a duty-disability retirant after he attains 55 years of age." (Emphasis added.)

*Zittel* was not appealed by the city.

The trial court's second opinion pertained to the action filed by Giffin. The Giffin claim differed

from the claims of Hale, Bannan, and Kaufman, in that Giffin had been denied duty disability status by the board despite the fact that the city had voluntarily commenced payment of workers' compensation benefits and Giffin's disability was caused or aggravated by his employment as a fireman. In the second opinion the trial court first noted that in *Braun v Board of Trustees,* an earlier Saginaw Circuit Court case,[1] the court had held that the test governing entitlement to workers' compensation benefits was virtually identical to the eligibility requirements for duty disability pensions under §§ 123-124 of Ordinance D. The court then proceeded to hold:

"In view of this court's ruling in *Braun* and the City of Saginaw's voluntary payment of workers' compensation benefits, this court holds that the defendant acted arbitrarily and capriciously in denying plaintiff's application for duty disability retirement status."

The trial court ordered the board to award Giffin a duty disability pension with reimbursement for all pension offsets.

I

*Did the trial court err in construing Ordinance D as prohibiting the deduction of plaintiffs' workers' compensation benefits from their duty disability pensions?*

Defendant initially argues that the plain and unambiguous language of § 129 mandates that *all* retiree pensions must be offset by the amount of workers' compensation benefits paid retired fire fighters. Where a statute is unambiguous on its

[1] Saginaw Circuit Court Docket No. 78-01945-AW-4.

face, it is to be enforced as written. *Dussia v Monroe County Employees Retirement System,* 386 Mich 244, 249; 191 NW2d 307 (1971). Standing alone § 129 is plain and unambiguous. It clearly provides that "any workmen's compensation * * * shall be offset against any pensions payable". No exception is contained within the section.

However, when § 129 is read in connection with § 124.2, providing that fire fighters who receive disability pensions prior to becoming 55 years of age shall be subject to the offset, ambiguity is introduced. Statutes are to be read in their entirety and, if possible, all sections are to be harmonized to create a consistent whole. *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956); *Lake Carriers' Ass'n v MacMullen,* 91 Mich App 357, 363; 282 NW2d 486 (1979). In the case before us, where one section (§ 129) contains no cross-reference to other sections of the statute, but where three other sections (§§ 122, 124.2, and 127) cross-reference to § 129, the statute is far from being unambiguous. Accordingly, well-recognized rules of statutory construction must be employed.

A basic rule of statutory construction is the principle that, where, in the same statute, there is a specific provision and also a general provision which would include matters embraced in the specific provision, the specific provision shall control. *William's Delight Corp v Harris,* 87 Mich App 202, 208; 273 NW2d 911 (1978); *Evanston YMCA Camp v State Tax Comm,* 369 Mich 1, 8; 118 NW2d 818 (1962). In construing statutes, a statute expressing particular legislative intent will control over a statute expressing general intent. *People v Bernard Smith,* 81 Mich App 561, 570; 266 NW2d

40 (1978). The trial court applied this rule of construction in holding that the specific provision in the last sentence of § 124.2 took precedence over the more general provision of § 129.

A second well-settled rule of statutory construction is that all language is presumed to have meaning and no word or phrase of a statute should be treated as surplusage or rendered nugatory if at all possible. *Melia, supra,* pp 562-563; *Baker v General Motors Corp,* 409 Mich 639, 665; 297 NW2d 387 (1980). Defendant argues that the language "To his attainment of age 55 years his disability pension shall be subject to Sections 128 and 129" appearing in the last sentence of § 124.2 was used "to expressly indicate" that the under-55 duty-disabled retiree is subject to the § 129 offset. Defendant's argument makes the quoted words redundant. For if § 129 includes *all* retirees regardless of age, the last sentence in § 124.2 is unnecessary and surplusage. Since statutory language is not to be considered surplusage, the logical conclusion is that the language signified that the offset applies to attainment of age 55 but does not apply thereafter. This is precisely what the trial court held in *Zittel* and in the instant cases.

A third well-observed principle of statutory construction is the rule that statutory provisions are to be construed as a whole. When read as a whole, one is struck by the fact that § 129 is expressly referred to not just once but three times: (1) in § 122.1 relating to a retirant taking a nonduty disability retirement; (2) in §§ 127.1(b)-127.1(e) pertaining to pensions payable to widows, children, and dependents; and (3) in § 124.2, as previously noted, pertaining to a duty-disabled retiree up to 55 years of age. The very fact that there are three

places where the statute states what § 129 has
stated in general language in itself suggests that
the offset provision is not all inclusive. More im-
portantly, the fact that § 124.1 (the section applica-
ble to the instant cases) does not refer to § 129
forcefully suggests that the general language of
§ 129 only applies when expressly cross-referred.

For the foregoing reasons, we conclude that the
trial court correctly determined that the offset
provisions of § 129 do not apply to § 124.1 duty-
disabled retirants who retire after attaining age
55.

## II

*Did the trial court err by finding that disability
pension benefits are not "like benefits" within the
meaning of § 161 of the WDCA, MCL 418.161;
MSA 17.237(161)?*

Without discussion the trial court dismissed the
city's argument that disability pensions are "like
benefits" as defined in § 161 of the Worker's Dis-
ability Compensation Act (WDCA). In relevant
part § 161 provides:

"Police officers, or fire fighters, or employees of the
police or fire departments, or their dependents, in mu-
nicipalities or villages of this state having *charter
provisions prescribing* like benefits, may waive the pro-
visions of this act and accept like benefits that are
prescribed in the charter *but shall not be entitled to
like benefits from both their local charter and this act.*
This act shall not be construed as limiting, changing, or
repealing any of the provisions of a charter of a munici-
pality or village of this state relating to benefits, com-
pensation, pensions, or retirement independent of this
act, provided for employees." (Emphasis added.)

In *Johnson v Muskegon*, 61 Mich App 121; 232 NW2d 325 (1972), this Court held that a police officer's duty disability pension and workers' compensation benefits were "like benefits" as that term is employed in § 161, *supra*. Defendant argues that *Johnson* is controlling and further points out that the periodic payments for the duty disability pensions provided to the four plaintiffs are substantially equal or greater than the annualized weekly benefits provided under the WDCA.

*Johnson* is distinguishable from the consolidated cases before us in three respects. In *Johnson* the pension benefits were provided by *charter*. Here, the benefits are provided by ordinance. While defendant argues that this distinction elevates form over substance, this Court recognizes that pension laws, being remedial in nature, should be liberally construed in favor of the persons intended to be benefited thereby. *O'Connell v Dearborn Police & Fire Pension Bd*, 334 Mich 208; 54 NW2d 310 (1952). It follows, that statutes which limit pension benefits should be strictly construed against those who seek such limitations. Therefore, we do not believe that the distinction between charter and ordinance in the situation before us is placing form over substance. Finally, we note that the precedential value of *Johnson* has recently been weakened by this Court's decision in *Teddy v Dep't of State Police*, 102 Mich App 412; 301 NW2d 876 (1980). In that case, a state police officer's right to draw both workers' compensation benefits and pension benefits was challenged on grounds that the two were "like benefits" prohibited under § 161. This Court in *Teddy*, p 121 said:

"Whether the benefits are like benefits depends on whether the pension was a disability pension or a

retirement pension. In its order granting leave, this
Court requested further information regarding the pen-
sion. The parties prepared a stipulation in answer to
this order, which was certified to this Court by the
WCAB on February 12, 1980. Although the stipulation
does not expressly state that the pension was either a
retirement or disability pension, the documents at-
tached to the stipulation, incorporated by reference,
establish clearly that the pension was a retirement
pension."

In the instant situation, plaintiffs were not re-
quired to elect between workers' compensation
benefits and a disability pension. The city voluntarily
paid workers' compensation benefits to all but
one of plaintiffs and plaintiffs began drawing a
disability pension at age 55 when they otherwise
would be drawing regular retirement benefits in
the same amount. Thus, the disability benefits can
be considered as primarily retirement benefits,
which, under *Teddy,* are not a like benefit. Accord-
ingly, we hold the trial court did not err in holding
that the retirement disability benefits were not
"like benefits" under § 161, *supra.*

### III

*In the case of plaintiff Giffin, did the trial court
abuse its discretion by issuing a writ of mandamus
ordering the board to approve Giffin's petition for
duty disability benefits?*

Because the board had found Giffin eligible for a
nonduty disability pension under §§ 121-122 of the
ordinance, and because § 122.1 expressly cross-ref-
erences to the offset provisions of § 129, Giffin was
subject to the workers' compensation offset. How-
ever, the question raised is whether Giffin was so
clearly qualified as a duty-disabled pensioner that

the trial court was legally justified in issuing a writ of mandamus.

Mandamus is an extraordinary remedy which may issue only under limited circumstances. *Dettore v Brighton Twp,* 58 Mich App 652, 655; 228 NW2d 508 (1975); *Johnston v Mid-Michigan Telephone Co,* 95 Mich App 364; 290 NW2d 146 (1980). A court may not issue a writ of mandamus unless a plaintiff proves he or she has a clear legal right to the performance of the specific duty sought to be compelled and the defendant has a clear legal duty to perform that action. *Dettore,* 654. Ordinarily, the act requested to be enforced must be ministerial, although the execution of the act may require discretion. *Pilarowski v Brown,* 76 Mich App 666, 674; 257 NW2d 211 (1977). An administrative decision involving the exercise of discretion is subject to reversal by the courts only where the evidence establishes that the agency has abused its discretion by arbitrary action. *Evans v United States Rubber Co,* 379 Mich 457; 152 NW2d 641 (1967); *Crider v Michigan,* 110 Mich App 702, 716; 313 NW2d 367 (1981).

Pursuant to Saginaw Ordinance D, § 123, the board did have the discretion, based upon the medical director's report, to determine if Giffin was incapacitated due to a disability which occurred as the "natural or proximate result of causes arising out of and in the course of employment with the city". There is no mandate in that section for the board to apply the decision of the separate administrative agency deciding Giffin's workers' compensation claim. Furthermore, the standards under § 123 and the WDCA are not precisely the same.

The standard for entitlement to workers' compensation benefits varies from the standard set forth in the ordinance for entitlement to retirement benefits. Section 123 employs a "natural and proximate result of causes arising out of and in the course of employment" standard. This is called the proximate cause test. In his treatise on workmen's compensation Professor Larson notes that the proximate cause test is different from the "causal nexus" test used in workers' compensation cases. 1 Larson, Workmen's Compensation Law, §§ 6.00-13.23, pp 3-1 to 3-435. In *Whetro v Awkerman*, 383 Mich 235; 174 NW2d 783 (1970), our Supreme Court disavowed the proximate cause test.

Plaintiff Giffin contends that because the minutes of the board disclose that at its December 17, 1974, meeting, the board determined to "receive and file" Giffin's request for reconsideration, the board acted arbitrarily and capriciously. Counsel argues that the board had but one duty, *viz.:* vote the application either up or down, but under no circumstances avoid a decision by merely receiving and filing.

While it is true that the board eventually voted to "receive and file", it only did so after first thoroughly reviewing and considering the totality of the evidence submitted to it. At the meeting on December 17, 1974, the board reviewed the reports of two doctors filed when Giffin applied for benefits. Included with those reports were a laboratory report, a pulmonary function study, an electrocardiogram report, and two x-ray consultation reports. Neither doctor recommended that Giffin be placed on a duty disability pension. The evidence on file disclosed that Giffin was 5' 11" tall, weighed

257 pounds and had a long history of cigarette
smoking. Given the substantial material reviewed,
the board could reasonably conclude that Giffin's
disability was not the natural and proximate re-
sult of his work as a fireman but instead was the
natural and proximate result of obesity and heavy
cigarette smoking. As was stated by the Supreme
Court in *Bischoff v Wayne County,* 320 Mich 376,
386; 31 NW2d 798 (1948), quoting from the sylla-
bus in *State ex rel Reilly v Spokane Civil Service
Comm,* 8 Wash 2d 498; 112 P2d 987 (1941):

" 'Mandamus will not lie in matters involving discre-
tion on the part of a public agency unless its action is
so arbitrary and capricious as to evidence a total failure
to exercise discretion.' "

See, also, *Brownstown Twp v Wayne County,* 68
Mich App 244, 251-252; 242 NW2d 538 (1976).

The trial court seems to have assumed that, if
the applicant draws workers' compensation, the
applicant automatically qualifies for duty disabil-
ity retirement. However, § 122 of Ordinance D, by
its express reference to § 129, contemplates that
nonduty disability retirees may receive workers'
compensation benefits. It is then up to the board to
determine whether an employee drawing workers'
compensation benefits falls within the §§ 121-122
nonduty disability provisions or § 124 duty disabil-
ity provisions of the ordinance. The board care-
fully reviewed the evidence and made the decision
that it would not change its earlier determination
that Giffin's medical problem was not duty related.
It was only after arriving at this conclusion that
the board voted to "receive and file" the applica-
tion for reconsideration.

Under the circumstances described above, we
cannot find the board's action arbitrary, unreason-

able, or capricious. Under the ordinance the board was vested with discretion to determine whether the subject's disability was duty or nonduty related. The board carefully exercised that discretion. Mandamus does not lie for a discretionary determination unless the determination is arbitrary or capricious. *Brownstown Twp, supra.* For these reasons we find that the trial court abused its discretion in concluding that the board acted arbitrarily and capriciously. Accordingly, it was error to issue the writ of mandamus as to Giffin.

The judgments as to Bannan, Kaufman, and Hale are affirmed. The judgment as to Giffin is reversed. No costs, questions of public interest being involved.

R. B. MARTIN, J. *(concurring).* I concur, but do not find it necessary to determine if a duty disability pension and workers' disability compensation benefits are "like benefits" under MCL 418.161; MSA 17.237(161); *Johnson v Muskegon,* 61 Mich App 121; 232 NW2d 325 (1975); *MacKay v Port Huron,* 288 Mich 129; 284 NW 671 (1939). *Johnson's* benefits were provided by *charter.* Here, appellees' benefits were provided by *ordinance* and not controlled by § 161 of the Worker's Disability Compensation Act, which refers solely to *charter* provisions in prohibiting entitlement to like benefits. The question of the constitutional propriety of having ordinance created pension plans fall into a different classification than charter created pension plans was not raised, and we do not consider it.