154 Mich. App. 373 (1986)
397 N.W.2d 552
BCS INSURANCE COMPANY
v.
COMMISSIONER OF INSURANCE
Docket No. 87522.
Michigan Court of Appeals.
Decided September 8, 1986.
Frank J. Kelley, Attorney General, Louis J. Caruso, Solicitor General, and Harry G. Iwasko, Jr., and Deborah K. Canja, Assistant Attorneys General, for the commissioner.
Foster, Swift, Collins & Coey, P.C. (by William K. Fahey), for plaintiff.
Before: SHEPHERD, P.J., and ALLEN and G.R. COOK,[*] JJ.
SHEPHERD, P.J.
Nancy Baerwaldt, the commissioner of insurance, and David R. Coleman, an Assistant Commissioner of Insurance for Licensing and Admissions, appeal as of right from an August 28, 1985, order of the Ingham Circuit Court. In the order the court issued a writ of mandamus and ordered the commissioner to approve the application of plaintiff BCS Insurance Company for authority to write medical malpractice insurance in Michigan. We affirm the order.
I
The facts of the instant case are not in dispute. Plaintiff BCS is an Ohio insuranca corporation. Its parent company is BCS Financial, which is a subsidiary of the National Blue Cross & Blue Shield Association. BCS is licensed to transact insurance in all fifty states. BCS first underwrote insurance in Michigan in 1960 when it was *376 granted authority to market liability insurance. In 1980, BCS was granted authority to write disability insurance in Michigan. On February 13, 1985, BCS filed an application with the commissioner of insurance, seeking additional authority so that it could provide medical malpractice insurance to Michigan health maintenance organizations (HMOS) operated by Blue Cross & Blue Shield of Michigan (BCBSM).
On July 15, 1985, David Coleman, Assistant Commissioner of Insurance for Licensing and Admissions, wrote BCS a letter denying its application. The denial was based on representations by BCS that it intended to reinsure one hundred percent of its malpractice obligations with Central Insurance, Ltd., located in the Bahamas, and Business Group Insurance, Ltd., located in the Cayman Islands. These "offshore" reinsurance companies are subsidiaries of BCBSM. The commissioner contends that the effect of this reinsurance arrangement would be that BCBSM would be providing insurance. Under MCL 550.1206(4); MSA 24.660(206)(4), a health care corporation is forbidden to market insurance. In the denial letter, Coleman stated: "It is the Insurance Bureau's position that under Michigan statutes [BCBSM] does not have the authority to own an offshore company to either write the business of insurance directly or reinsure such risks." Coleman also asserted that, if BCS were granted authority to write medical malpractice insurance, it would merely act as a conduit to enable BCBSM to do directly what it could not otherwise do legally. Because of the relationship between BCS, the national BCBS association, and BCBSM, Coleman concluded that BCS was not "safe, reliable and entitled to public confidence" as required by MCL *377 500.424(3); MSA 24.1424(3), and denied BCS'S application.
On August 5, 1985, BCS filed the instant complaint in the Ingham Circuit Court, seeking four alternate means of review, including mandamus. The trial court agreed with BCS that the commissioner should pursue its dispute over the allegedly illegal ownership of these reinsurance companies in a direct action against BCBSM, and granted mandamus, ordering the commissioner to approve BCS'S application for authority to write malpractice insurance. The parties do not dispute that in fact the commissioner did bring an action to divest BCBSM of its ownership of the reinsurance subsidiaries in 1983, Ingham Circuit Court Docket No. 83-51321-AW, which, according to the parties in the present action is, still pending.
II
The commissioner argues on appeal that the writ of mandamus was improperly granted because the act (approval of BCS'S application) sought to be compelled was discretionary and there was not a clear legal duty requiring the commissioner's approval.
A court may not issue a writ of mandamus unless the plaintiff proves he or she has a clear legal right to the performance of the specific duty sought to be compelled and the defendant has a clear legal duty to perform the action. Bannan v City of Saginaw, 120 Mich App 307, 324; 328 NW2d 35 (1982), aff'd 420 Mich 376 (1985). In the instant case, BCS asserts that it meets the statutory requirement for approval under MCL 500.424; MSA 24.1424. However, the commissioner found that BCS was not "safe, reliable and entitled to public confidence" under the same statute. The *378 only basis which the commissioner has cited for her conclusion is BCS'S self-confessed intention to reinsure one hundred percent of its business with reinsurance companies which the commissioner believes are illegally owned by BCBSM.[1] The commissioner asserts that a grant of the authority requested would enable BCS to facilitate the illegal activity of BCBSM.
The commissioner of insurance has the statutory duty to review applications for insurance authority and to approve applicants who meet the requirements of MCL 500.424(3); MSA 14.1424(3). That subsection provides:
(3) The commissioner shall examine such application and if satisfied that such applicant is safe, reliable and entitled to public confidence and is possessed of the capital and assets required of like insurers organized in this state, is authorized to do the kind or class of insurance it seeks to transact, and has complied in all other respects with the laws of this state, as applicable thereto, he shall issue his certificate of authority to such applicant.
Here, the commissioner denied BCS'S application solely on the ground that BCS was not "safe, reliable and entitled to public confidence" because of BCBSM'S allegedly illegal ownership of the reinsurance companies. Neither party has briefed the issue of whether BCBSM'S ownership of these reinsurance *379 companies is in fact in violation of MCL 550.1206(4); MSA 24.660(206)(4). That presumably is the topic of the commissioner's earlier filed case against BCBSM, which is still pending. The commissioner in this case has not suggested why the ownership of the reinsurance companies by BCBS renders BCS unsafe, unreliable or not entitled to public confidence. She apparently based her determination solely upon the fact of the allegedly illegal ownership rather than any perceived adverse consequences of the ownership which would render BCS unsafe, unreliable or not entitled to public confidence, or any finding that the reinsurance companies were unsafe or unreliable.
Although the statutory phrase "safe, reliable and entitled to public confidence" has not been previously interpreted, we find it clear from the statutory context that the commissioner may deny an application if she concludes, based on insufficient assets or a prior course of disapproved conduct, that the applicant may not be financially secure or willing or able to meet its obligations at the time of the application or in the future. Here, the commissioner has not suggested that the allegedly illegal ownership of the proposed reinsurers by BCBSM might somehow leave the public unprotected. We note that BCS, which is itself financially sound and entitled to public confidence, would remain the insurer liable to the policy holders. See 44 Am Jur 2d, Insurance, §§ 1831-1841, pp 823-833.
The commissioner could have moved to consolidate this case with its previously filed divestiture action against BCBSM under MCR 2.505(A). If the cases had been consolidated the commissioner might have been in a better position to assert that the illegality of the reinsurers' ownership by BCBSM, if shown, somehow rendered BCS unsafe, unreliable and not entitled to public confidence. In *380 the present case, even assuming that the ownership of the proposed reinsurers is illegal, the commissioner has not stated why the ownership scheme renders BCS unsafe or unreliable. The commissioners may not use BCS'S application for authority to provide medical malpractice insurance as a device to address BCBSM'S ownership of the proposed reinsurers unless that relationship renders BCS unsafe, unreliable or not entitled to public confidence. We have found no explanation in the record which supports that conclusion. The commissioner's concern seems to be only that these reinsurance companies are owned by someone who is not supposed to own them. Accordingly, the commissioner had a clear legal duty to approve the application and the writ of mandamus was properly entered. If, in the commissioner's pending action against BCBSM, the court determines that BCBSM'S ownership of the reinsurers is illegal, then BCBSM, which is not a party to this case, would have to divest itself of its holding in those corporations or take other action found by the court to be required by law.
Affirmed.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.
[1] MCL 550.1206(4); MSA 24.660(206)(4) provides:

(4) A health care corporation shall not market or transact, as defined in sections 402a and 402b of Act No. 218 of the Public Acts of 1956, being sections 500.402a and 500.402b of the Michigan Compiled Laws, any type of insurance described in chapter 6 of Act No. 218 of the Public Acts of 1956, as amended, being sections 500.600 to 500.644 of the Michigan Compiled Laws. This subsection shall not be construed to prohibit the provision of prepaid health care benefits.